Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of MATILDA KADE, Respondent, for Compensation under the Workmen's Compensation Law, Claimed to Be Due JESSIE KADE, Deceased, *v.* THE GREENHUT COMPANY, INC., Employer, and ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, November 18, 1920.

**Workmen's Compensation Law — injury to saleswoman by fall, bruising back and right side — subsequent disability from infected kidney — evidence not establishing that accident was proximate cause of disability — claim dismissed.**

A saleswoman while working in a hardware department fell, after straining herself by lifting, bruising her back and right side. Her subsequent disability resulted from an infection of the right kidney. There was evidence that the infection was caused by the introduction of a pessary a month after the accident.

*Held,* on all the evidence, that the accident was not the proximate cause of the injury, and that, therefore, the award should be reversed and the claim dismissed.

JOHN M. KELLOGG, P. J., and H. T. KELLOGG, J., dissent.

APPEAL by the defendants, The Greenhut Company, Inc., and another, from an award and order of the State Industrial Commission, entered in the said Commission's New York office at 230 Fifth avenue, on the 27th day of June, 1919,

modifying an award of the said Commission dated the 23d day of April, 1919.

*Philip J. O'Brien* [*John N. Carlisle* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

WOODWARD, J.:

The State Industrial Commission has made an award to the administratrix of Jessie Kade, deceased, for compensation for disability, not death benefits, from December 29, 1917, to May 7, 1919, the date of her death. Whether it is proposed, after the payment of this compensation, to continue the punishment after death and compel the insurance carrier to pay death benefits, does not appear, though almost anything seems possible.

The claimant in this case is the administratrix of Jessie Kade, deceased, though for the purpose of convenience in discussion we will refer to the decedent as the claimant, and treat the case as though she had survived and was here claiming the compensation.

The claimant, Jessie Kade, was employed by the Greenhut Company in New York, on the 18th day of July, 1917, as a saleswoman in the hardware department. On that date a stock of hardware was to be placed on the shelves. A part of the invoice consisted of galvanized tubs wired together in packages of six. Claimant removed the wires and found that the tubs stuck together, and being unable to separate them she picked up the package and in doing so she says that she "felt something snap inside of me, and I fell backward; then I fell against the tubs and I got weak and I fainted and when I came to I was on the floor." She further says that she struck her back and side against the wash tubs; that she subsequently went to the toilet room, where in passing water she bled; that there was blood in the basin in the toilet, and she makes it sufficiently clear that this blood was not of menstrual origin; so that it may be assumed for the purposes of this discussion that there was an accident on the 18th day of July, 1917, happening in the course of the regular employment, and that the injury sustained was in the back and side in the region of the left kidney, and that this injury was sufficient

to produce some flow of blood, although from the description given it is fair to presume this was not a large flow. The claimant testifies that the accident happened at about half-past ten in the morning; that she stayed in the sick room until lunch time; that she went out to lunch, returning to the sick room, where she stayed until four o'clock, when she went back to her work. While the claimant says she frequently went back to the sick room for rests, that she suffered pain in her side, etc., the evidence shows that she continued in the employment up to the middle of December, 1917, being attended by Dr. Eichberg, the store physician, who says the claimant told him she had been lifting something heavy and that she had strained some of the muscles of her right abdomen; and the claimant testifies that " the doctor strapped my abdomen with adhesive plaster," and that this treatment was continued up to the time that she was sent to one Dr. Tompkins, a female physician, for an examination which she refused to male doctors. Dr. Eichberg, after testifying to sending the claimant to Dr. Tompkins, and that her diagnosis was " tipped uterus and right kidney was dropped," said that he found no causal relation between the injury and the subsequent condition developed at an operation, which was the conceded cause of the disability.

Dr. Tompkins testified to making an examination of the claimant and that she found a displaced uterus. This examination occurred on the twenty-first day of September, about two months after the accident, and the doctor was unable to say whether the tipped uterus and the dropping of the right kidney, which she also found, were due to the accident; she testified that they might have been, and also that a woman standing on her feet a great deal, as in the case of the claimant, might develop these troubles independently of the accident; that this was quite common. Answering a hypothetical question, based on the conditions shown after the operation for the removal of the diseased left kidney, Dr. Tompkins testified that she did not think it would be possible that there could be any connection between the accident and the disease of the kidney. Commissioner Archer asked at this point, " If there were a pre-existing kidney lesion, would an accident such as described cause an acute exacerbation of the condition? " To this Dr.

Tompkins answered, " Possibly, but it would be necessary to have germs in the kidney to have pus there, and an accident causing a dropping of the kidney could not put germs in the kidney." Dr. Eichberg agreed in this proposition, and Dr. Tompkins testified in answer to the Commissioner that there need have been no disability from the accident itself; that there would have to be a little treatment for two years; one visit a month for two years to cure her condition which she found on her examination.

The claimant's family physician was called and testified that he had treated the claimant for a slight difficulty some time previous to the accident; that he was again consulted about the middle of December, 1917, and up to the time that he sent her to St. Francis Hospital, where the operation for the diseased kidney took place. He said that when she came to him in December the claimant gave him a history of an exposure to a rain storm; that he examined her and thought she was suffering from grippe-pleurisy; that he treated her for that a few days, and, getting no results, became suspicious of his diagnosis; that he insisted upon a vaginal examination, which was refused. He says the claimant at that time informed him that she had been to Dr. Tompkins, and that Dr. Tompkins had inserted a pessary. The family doctor then says that he made a urine examination, and after watching her for a few days sent her to St. Francis Hospital, where an examination revealed a pus kidney, for which an operation was performed, demonstrating the accuracy of the diagnosis. This doctor was asked if he found any· causal relation between the accident and the condition which was demonstrated by the operation, and he practically confirms the two previous doctors, by introducing a theory as to the infection. He says: " The only way I consider her condition is this: that the accident or injury she had formerly at Greenhut's weakened or bruised her kidney and the insertion of the pessary carried infection to this bruised or injured kidney and this caused the infection." Of course, if this is true, then the accident was not the proximate cause of the disability for which· this award has been made. In *Laidlaw* v. *Sage* (158 N. Y. 73, 98, 99) the court, in discussing proximate cause, quotes with approval from Bishop on Non-

Contract Law (§ 42) that " if, after the cause in question has been in operation some independent force comes in and produces an injury, not its natural or probable effect, the author of the cause is not responsible; " and the Workmen's Compensation Law (§ 3, subd. 7, as amd. by Laws of 1917, chap. 705) distinctly provides that "personal injury " shall " mean only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." Clearly the alleged infection introduced two months after the alleged accident by the introduction of a pessary was not such an " infection as may naturally and unavoidably result " from a fall which merely bruises the person.

It is to be noted that the award does not date from the alleged accident in July, 1917, but from December 29, 1917, at about which time the diseased kidney became manifest, and, according to the claimant's own physician, this disease was communicated, not by the accident, but by the insertion of a pessary a month or more after the accident, and the pessary, not the accident, conveyed the infection. Obviously, therefore, up to this point there is no causal relation between the accident and the conceded cause of disability. *Prolapsus uteri* and a falling of the right kidney, Dr. Tompkins says, would not produce any disability; was a condition requiring a monthly treatment for two years, which would not incapacitate the patient, and it was a condition quite common among women occupied as was the claimant.

Dr. O'Neill was a physician at St. Francis Hospital, and he testified that the claimant was suffering from a pus kidney when she reached the hospital on the eighteenth of January; that the record showed that she gave as the history of her then difficulty that she had been exposed to a severe rain storm; that she was suffering from chills and fever and had pleurisy. Answering a hypothetical question this physician said the accident was " pretty remote."

Dr. Edgerton, who performed the operation on the claimant, in answer to a question by Dr. Lewy, the Commission's advising physician, declared that he could not connect the injury with the disease. There appears to have been some controversy between Dr. Edgerton and Dr. Lewy as to what the

facts were upon which the hypothetical question was based, and while it is difficult to follow the matter in the record with all the " ifs " and conjectures, it may be fairly said that Dr. Edgerton did give it as his opinion that if the alleged fall of the claimant resulted in a hemorrhage of the left kidney this condition might have remained dormant and eventually have developed the condition of the kidney which he found on the operation, which does not appear to have been tubercular, though of unusual size. This, in connection with the testimony of the claimant that the blood was not due to menstruation, seems to be the extent of the evidence in any manner tending to show that the disease which was the conceded cause of the disability for which this award has been made was produced by the accident. This evidence does not, of course, show that the hemorrhage was that of the left kidney, nor of any kidney. Dr. Tompkins testified that upon her examination she found a prolapsed uterus and a slight falling of the right kidney, and no testimony is adduced to indicate that the alleged blood passed at the time of the alleged accident may not have come from this disturbance of the organs, which Dr. Tompkins says may have been produced by the accident. Dr. Lewy, who has never been accused of lack of capacity or zeal in developing theories to support awards under the statute, gives it as his opinion that the accident was not the cause of the disease, and the State Industrial Commission has heretofore refused an award, but after the death of the claimant, and upon considering the opinion of a deputy commissioner who dwells heavily upon the alleged fact that the claimant was an unusually healthy girl, it reverses its previous conclusions and makes an award to the administratrix of the estate of the original claimant.

It may be that out of this massive record of 239 pages, of which counsel for the Commission says about one-half is " devoted to verbal sparring between counsel which it is not necessary to read," there may be patched together enough to constitute a scintilla of evidence to support this award, but it is certain that the verdict of a jury could not rest upon such a foundation; and the question is thus presented how far this court is limited by the provisions of section 20 of the Workmen's Compensation Law (as amd. by Laws of 1919,

chap. 629), that "the decision of the Commission shall be final as to all questions of fact, and, except as provided in section twenty-three, as to all questions of law." It has long been recognized that whether there was evidence to support or tending to sustain a finding of fact is a question of law (*People ex rel. Stephenson* v. *Bingham,* 205 N. Y. 169, 170, and authorities there cited), and the Constitution (Art. 6, § 9) provides that "no unanimous decision of the Appellate Division of the Supreme Court that there is evidence supporting or tending to sustain a finding of fact or a verdict not directed by the court, shall be reviewed by the Court of Appeals." This would seem to impose the duty upon this court, in ordinary matters of appeal, of determining whether there was evidence "supporting or tending to sustain a finding of fact," and the United States Supreme Court, in *Ohio Valley Co.* v. *Ben Avon Borough* (253 U. S. 287), holds squarely that it is necessary to due process of law that " the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts." The Public Service Commission of the Commonwealth of Pennsylvania took under consideration a complaint as to the rates of a water company, and fixed the valuation at a given figure and permitted a rate to yield seven per cent. The company appealed to the Superior Court, which re-examined the question of values on which the rates were to be determined, and largely increased such valuation. The Supreme Court reversed the Superior Court and directed the reinstatement of the order of the Commission. The United States Supreme Court reversed the Supreme Court of Pennsylvania, remarking that upon considering the entire opinion " we are compelled to conclude that the Supreme Court interpreted the statute as withholding from the courts power to determine the question of confiscation according to their own independent judgment when the action of the Commission comes to be considered on appeal," and that " in all such cases, if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise

the order is void because in conflict with the due process clause, Fourteenth Amendment."

It would seem to follow that if the Workmen's Compensation Law is to be literally followed, and the Commission's conclusions of fact are to become final whenever there is a scintilla of evidence to be found in the record, the legislation does not meet with the requirements of due process of law, and this difficulty is not met by anything in the provisions of section 19 of article 1 of the State Constitution, which were designed to meet the objections pointed out in *Ives* v. *South Buffalo R. Co.* (201 N. Y. 271) and do not profess to deal with the question of the mode of determining the essential facts on which the right to compensation depends. If, however, we read the provision of the statute to provide that the " decision of the Commission shall be final as to all questions of fact which are supported by legal evidence, and as to all questions of law which are not reversed upon appeal as provided in section 23," the way is open to a rational system, and one which can command the sanction of the courts; and this, we apprehend, is the true construction of the statute. Starting with the established rule that whether there is evidence to support a finding of fact is always one of law (*People ex rel. Stephenson* v. *Bingham*, 205 N. Y. 168), we find that as early as the leading case of *Laidlaw* v. *Sage* (158 N. Y. 73, 97) it was held upon a long line of decisions, uniformly followed, that " to justify the submission to the jury of any issue, there must be sufficient proof to sustain the claim of the party upon whom the onus rests, and that mere conjecture, surmise, speculation, bare possibility or a mere scintilla of evidence, is not enough." (*Matter of Case*, 214 N. Y. 199, 203.)

It can hardly be argued successfully that evidence which would not warrant a jury in finding that the accident on which this claim must rest was the proximate cause of the disability of the claimant can be relied upon to support a finding of fact made by the State Industrial Commission, thus depriving the employer and the insurance company of their property. Such a holding would be to deny to these defendants that due process of law, that equal protection of the law, which is accorded to the owners of other property within the State of New York (U. S. Const. 14th Amendt. § 1; State Const.

art. 1, § 6), and we are bound to believe that no such result was intended upon an appeal to this court. The right to appeal provided in section 23 of the Workmen's Compensation Law (as amd. by Laws of 1917, chap. 705) is not such a judicial determination as demanded by the court in the *Ohio Valley Co. Case* (*supra*) unless it permits a full review as to the law and facts, and the language of the act is satisfied by making the facts conclusive unless reversed upon the short appeal provided to a single department of the Appellate Division of the Supreme Court, without going to the extent of holding that it contemplates an arbitrary power on the part of the Commission to find facts unsupported by evidence which would pass muster in an ordinary court of law.

If we are right in these propositions this case comes fully within the rule in *Matter of Alpert* v. *Powers* (223 N. Y. 97), and the award may not stand.

The award appealed from should be reversed.

All concur, COCHRANE, J., in result on the ground that there is no evidence to sustain the award, except JOHN M. KELLOGG, P. J., and H. T. KELLOGG, J., dissenting.

Award reversed and claim dismissed.