MOFFETT, Respondent, *v.* BOZEMAN CANNING CO. et al.,
Appellants.

(No. 7,149.)

(Submitted October 3, 1933. Decided November 10, 1933.)

[26 Pac. (2d) 973.]

*Mr. W. S. Rynerson* and *Messrs. Clift & Glover,* for Appellants, submitted an original and a reply brief; *Mr. R. H. Glover* argued the cause orally.

*Mr. E. F. Bunker,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On August 12, 1928, Carl A. Moffett was in the employ of the Bozeman Canning Company, operating under plan 2 of the Workman's Compensation Act (Rev. Codes 1921, secs. 2978–2989), with the Aetna Life Insurance Company as insurance carrier. The claimant was a strong, able-bodied young man, twenty-four years of age, and was engaged in piling cases of canned peas, which weighed approximately forty pounds, in tiers until they reached a height greater than his own. On the date above mentioned Moffett attempted to swing a case into place, but, by reason of the fact that it was stuck to the case below it, encountered a weight of eighty pounds when he expected but forty; he immediately felt pain in his right side and back, at the top of his hip-bone, and was unable to continue his labors. Moffett was examined and treated by Dr. Seerly, of Bozeman, and the next day reported to the plant, where he was given the light work of gluing cartons, in which he continued for some time, but was forced to quit the employ of the com-

pany because unable to work. He worked in a pool-hall during the winter, but finally became totally unable to perform any labor.

The insurance carrier paid compensation in the sum of $30 and $26 hospital expenses. Moffett signed a final compensation receipt for these items on October 19, 1928; his accident and the payments made were reported to the Industrial Accident Board. Nothing further was reported to the board until September, 1930, when claim was made that Moffett was totally disabled, and compensation therefor was demanded. The insurance carrier resisted the claim, and a hearing was had before the board which resulted in its disallowance, from which order the claimant appealed to the district court. The court reversed the order of the board and ordered the payment of compensation. From this judgment the insurance carrier and the employer appealed.

Such additional evidence as was adduced before the court is unimportant, and we may therefore consider the matter as though determined on the record.

In a case arising under the Workman's Compensation Act, the burden is on the claimant to establish by a preponderance of the evidence that the injury resulted (a) from an industrial accident (b) arising out of and (c) in the course of his employment. (*Kerns* v. *Anaconda Copper Min. Co.*, 87 Mont. 546, 289 Pac. 563; *Landeen* v. *Toole County Refining Co.*, 85 Mont. 41, 277 Pac. 615; *Nicholson* v. *Roundup Coal Min. Co.*, 79 Mont. 358, 257 Pac. 270; *Wirta* v. *North Butte Min. Co.*, 64 Mont. 279, 210 Pac. 332, 30 A. L. R. 964.)

In order for claimant to prevail under the foregoing rule, it was necessary for him to prove by a preponderance of the evidence that he suffered an injury by an industrial accident, and that the injury was the proximate cause of his present condition. (*Kerns* v. *Anaconda Copper Min. Co.*, above.)

The Workman's Compensation Act makes the Industrial Accident dent Board the trier of facts, and permits a review only, by the court, except in cases when, for good cause shown, evidence is permitted in addition to the record before the board.

(*Rom* v. *Republic Coal Co.*, 94 Mont. 250, 22 Pac. (2d) 161; *Willis* v. *Pilot Butte Min. Co.*, 58 Mont. 26, 190 Pac. 124; *Dosen* v. *North Butte Min. Co.*, 78 Mont. 579, 254 Pac. 880.)

The case came to the district court with the presumption that ▉ the board had decided correctly. (*Rom* v. *Republic Coal Co.*, above; *Radonich* v. *Anaconda Copper Min. Co.*, 91 Mont. 437, 8 Pac. (2d) 658.) The district court on appeal from the board is not justified in reversing a finding of the board unless the evidence clearly preponderates against such finding. (*Rom* v. *Republic Coal Co.*, above; *Morgan* v. *Butte Central M. & M. Co.*, 58 Mont. 633, 194 Pac. 496.)

If in the present case it does not appear that the evidence clearly preponderates against the findings of the board, the judgment of the court reversing the order of the board must in turn be here reversed, and the decision of the board dismissing the application must stand. (*Rom* v. *Republic Coal Co.*, above.)

It is conceded that the claimant suffered an industrial accident, and that, at the time of the hearing before the board, he was totally and permanently disabled. The question for determination is as to whether or not the injury received was the proximate cause of the affliction causing the disability.

The evidence clearly shows that, up to the moment of the accident, the claimant was a strong, healthy young man; the next day, on visiting the doctor's office, he was more nervous than is usual in a patient in the office; within three weeks he had a pronounced tremor in his left foot which gradually spread to both legs, his tongue and head. The doctors who testified all agree that the claimant is suffering from Parkinson's disease (paralysis agitans), or a Parkinsonian syndrome, both of which are commonly known as shaking palsy, and that either disease renders the patient totally disabled; is progressive and incurable. The expert testimony is that his affliction is seldom visited upon the young; it is an old man's disease.

However, as to the proximate cause of the claimant's affliction, there is an apparent conflict in the testimony of the several learned men who presumed to express an opinion on

the subject. Dr. A. C. Kelly, of Bozeman, testifying for the claimant, stated that in his opinion Moffett's condition "was caused at the time of the injury." Dr. C. B. Rodes, of Butte, who examined the claimant in December, 1930, stated that, because of certain things, he was "inclined to believe or feel that the accident was not the cause." Dr. S. A. Cooney, of Helena, in answer to a hypothetical question, stated that in his opinion the injury was not the cause of the claimant's condition. Dr. John L. Treacy, of Helena, attended the hearing at the request of the board, listened to the testimony, questioned certain of the witnesses, and examined the claimant. He reported to the board that his "best opinion" was that the injury did not produce the condition, but that it is "almost certainly a result of an infection which resulted in encephalitis lethargia, resulting in the present Parkinsonian syndrome." This report is accompanied by one from Dr. H. A. Bolton, of Warm Springs, who declares that he cannot give the cause, but "probably due to previous infection."

If this were all of the expert testimony before us for consideration, of course, the district court would have erred in reversing the order of the board. In a case dependent, for the solution of a question, on the expert testimony of medical men based upon experience and knowledge of the consensus of opinion of medical authorities, the board, as trier of the facts. must, when the experts are not in agreement, determine which expert, or experts, it will credit. The board having decided the question on credible evidence, the courts are without authority to set its findings aside.

Here, however, a peculiar situation is presented by the evidence. The doctors are in accord on the subject just discussed; they disagree as to the cause of the affliction they are asked to pass upon, but in doing so they frankly admit that they do not know, and the "authorities" do not know what causes the disease. As Dr. Cooney finally stated: "The cause is absolutely unknown; there is none shown." However, from excerpts from works used in the examination of the doctors, it appears that experience, extending over years, and the observa-

tion of many such cases, have shown to the "authorities" that the condition manifests itself after the patient has suffered from trauma, infection or emotion, shock, grief and the like, and therefore "theoretically they give these various causes."

Admitting, then, that the claimant's affliction is one which follows upon the heels of an injury, trauma, or infection, or emotion, but that no power on earth can say how or why, or in any given case, which of the theoretical causes was the present cause, the medical men venture to opine that this was the cause or that was not the cause.

There are two classes of cases in which expert testimony is ██ admissible: The one where the conclusions to be drawn by the jury depend upon the existence of facts peculiarly within the knowledge of men whose experience and study enable them to speak with authority upon the subject; if in such a case the jury, with all the facts before them, can formulate a conclusion, it is their sole province to do so. In the other class fall those cases wherein the conclusion, as well as knowledge of the facts from which it is drawn, depends upon the professional or scientific knowledge of witnesses. In this latter class of cases the expert is permitted to give his opinion, based upon his professional or scientific knowledge and experience, because only thus can the jury act intelligently. (*Copenhaver* v. *Northern Pacific Ry. Co.*, 42 Mont. 453, 113 Pac. 467.)

When called as an expert, a professional man must first show his qualifications to speak with authority, and may then testify only as to those matters on which he has peculiar knowledge, and may express his opinion as to the deduction to be drawn from facts, thus invading the province of the trier of facts only when his superior knowledge and experience enable him to deduce effect from cause and draw a conclusion which the trier of facts could not draw because of lack of such knowledge. The rule is that the opinions of experts are not admissible when based merely on speculative data. (Rogers on Expert Testimony, 2d ed., p. 33.)

Under all the rules of evidence, when, after answering a hypothetical question one way or the other, the expert frankly

admits that he does not know the answer and that no one in his profession could answer it, the answer to the hypothetical question should be stricken from the record and wholly disregarded by the trier of facts.

In a line of cases involving encephalitis lethargia (sleeping sickness), as to which the professional knowledge is about equal to that concerning the disease here involved, it is said that the opinions of experts are entirely too speculative and conjectural to afford a basis for a finding as to the cause of the disease. (*Shaw's Case*, 126 Me. 572, 140 Atl. 370; *Dehn* v. *Kitchen*, 54 N. D. 199, 209 N. W. 364; *Edge* v. *City of Pierre*, (S. D.) 239 N. W. 191.)

In addition to the fact that the doctors frankly admitted that ▉ the authorities do not know what causes the disease described, their conjectures on the subject are weakened by the state of the evidence and their seeming divergence of reasoning in arriving at their conclusions.

Dr. Seerly, who attended the claimant immediately following the injury, testified on behalf of the defendants. He said that the claimant "complained considerably of his abdomen," and his diagnosis of the condition was "anterior-posterior lumbago." He further testified that the young man had a slight urethral discharge, of which he made a slide and microscopic examination which showed gonococcus germs. The doctor prescribed a narcotic to relieve the pain and urotropin as an internal disinfectant. The claimant denied that he had any discharge, but claimed that his urine was discolored, and denied that the doctor made any slide. This condition, whether a discharge or not, cleared up in a short time. There is evidence in the record that a discharge may be caused by an injury.

Now, although the doctors conceded that the claimant's disease "theoretically" is caused by trauma, infection or emotion, Dr. Cooney ruled out trauma, because "I don't think trauma has ever been proven to be the cause," and because he had "never seen a case." He stated that he would not take issue with the authorities, but had his own opinion on the subject.

His argument would apply as well to infection as a cause, under the authorities.

Dr. Rodes, the other expert for the defendants, rather took issue with the idea that the claimant was suffering from Parkinson's disease, stating that it was Parkinsonian syndrome. He argues that the claimant has a nystagmus condition (involuntary shifting of the eyes), which might be caused by encephalitis lethargia, in turn set up by influenza infection. This is reasoning from effect to cause, instead of from cause to effect, and is based on a false premise, for there is no intimation in the record that the claimant ever had sleeping sickness, or that there had ever been a case of that contagious disease in the community. The doctor, however, made the following significant admission: "I wouldn't say, Judge, that that injury couldn't be associated with it. But, as I say, taking the history of cases and then including my physical findings, I believe that trauma is a minor thing, as a cause of it."

Dr. Treacy in his report to the board (it will be remembered that he did not testify, but sat as an arm of the board) agrees with Dr. Rodes on the basis of assumed infection resulting in encephalitis lethargia.

The statements made by the doctors hardly rise to the dignity of expert opinions, within the definition above given; they are more in the nature of surmises based upon the pathology of the disease considered, rather than upon facts which an attorney would be entitled to include within a hypothetical question propounded in this case. The infection to which the doctors tie as the theoretical cause of the claimant's condition would seem to be something other than the supposititious gonorrheal infection which might or might not be present. There is no evidence in the record supporting the theory of the presence of any other infection, such as that resulting from influenza. And, as to the suggestion of gonorrhea, a young man's disease, if the evidence was clear that claimant was suffering from that disease at the time of his injury, there is nothing in the evidence to warrant the conclusion that such an infection would result in the "old man's disease" with which

this young man is afflicted. We are informed by the doctors that such a case as is here presented is rare, if not unique.

The decision of the board is based upon the conclusion that the claimant failed to establish the cause of the disease by a preponderance of the evidence, solely because the board cannot accept the opinion of Dr. Kelly alone, and reject that of the two doctors who testified to the contrary and "hold valueless the report of Dr. Treacy." On the whole record we are constrained to hold that the so-called opinions are too speculative and conjectural to support the finding of the board on this phase of the case.

This leaves us faced by a peculiar fact condition: There is no conflict in the testimony as to the facts proved; the claimant is required to prove that the injury was the proximate cause of the disease; there is no direct evidence on this point, yet he has produced all the evidence possible; no known authority can furnish the positive testimony which would have induced the board to award him compensation. But, because the medical science has not progressed to a stage where one learned therein can say positively "this is the cause," or "that is not the cause," is one who has indubitably sustained an industrial accident in the course of and arising out of his employment, followed by the onset of a disease which totally incapacitates him, and which is known to follow such an injury in just such a course, to be denied compensation?

True, the duty of proving that the accident was the proximate cause of the subsequent lamentable condition is upon the claimant, and, where an injured workman is shown to have been suffering from a disease at the time of the injury which, in its natural course, was as likely to cause his later disability as was that injury, and the onset of the later disease is after the injury has healed, the courts cannot set aside the board's findings against the claimant. (*Brajcich* v. *Republic Coal Co.*, 94 Mont. 568, 23 Pac. (2d) 337.) But, even though a claimant was suffering from a disease, or contained in his body latent germs of disease, he is not to be denied compensation if the disease was aggravated or accelerated by the injury. (*Nichol-*

*son* v. *Roundup Coal Min. Co.,* 79 Mont. 358, 257 Pac. 270; *Murphy* v. *Industrial Accident Board,* 93 Mont. 1, 16 Pac. (2d) 705.)

The Workman's Compensation Act is not a social insurance ▇▇ law, justifying awards in cases of disease or death not caused by injury arising out of or in the course of the workman's employment, but the theory of the Act is that the industry should care for its man power, wrecked by reason of laboring in the industry, just as it must bear the expense of wreckage of machinery used in the same manner. This is but justice as well as humanity.

Formerly those embarking on an industrial enterprise were required only to count the cost of wear and tear on machinery, leaving society to care for the human wreckage, unless, through costly and uncertain litigation, the unfortunate or his dependents could recover damages from his employer by showing wherein the employer was negligent. In this enlightened age partial protection is afforded the workman and the direct burden removed from society, although, of course, the losses on the part of the industry are passed on to society ultimately in the price the consumer pays for the product of the industry. (Boyd on Workman's Compensation, 11.)

It is manifest that such a plant as the Bozeman Canning Company, operating under "Compensation Plan Number Two" (secs. 2978–2989, Rev. Codes 1921), counts the cost of premiums paid as a part of its operating expenses included in the sales price of its products, and it may be mentioned, though immaterial to the case, that the company is but a nominal party to this proceeding in so far as an award is concerned; it has paid its premium, and is under no further obligation whether an injured workman is or is not awarded compensation. On the other hand, the insurance carrier assumes the risk of all accidents which are compensable (sec. 2981), and, through its actuarial department, must have determined the premium to be charged in all such coverage on the basis of past experience in the insurance world as to what amount will take care of the reasonably anticipated losses and will net a profit on the busi-

ness. It is the right of the insurance carrier to insist that awards be made only when clearly within the purview of the law which is made a part of its contract.

Having in mind these reciprocal rights of the interested parties, it is manifest that, in justice to the claimant and to the insurance carrier, the claimant should be awarded compensation, provided, and provided only, that the evidence is such that the trier of facts can say on the record that he would not be in his present condition had it not been for the industrial accident which, admittedly, he suffered in the course of his employment and against which he was duly insured.

The record contains no direct evidence from which it can be ▮▮▮▮▮▮ said that the injury was the proximate cause of claimant's present condition; this, not because of failure on the part of claimant properly to present his case, but because, on the frank admission of the doctors, no man on earth knows positively the exact cause of such an affliction in any given case; medical science has not advanced to a point where it can positively trace back from the effect and declare the cause of the disease in a given patient. But this fact alone need not bar the claimant from recovery, if, on the record, it can be said that he is entitled thereto.

The law does not require the impossible; it does not require demonstration or such a degree of proof as, excluding the possibility of error, produces absolute certainty, because such proof is rarely possible. Moral certainty only is required; or that degree of proof which produces conviction in the unprejudiced mind. (Sec. 10491, Rev. Codes 1921.) A fact may be established by indirect evidence, or that which tends to establish the fact by proving another which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence. (Sec. 10497, Id.) Evidence is deemed satisfactory which ordinarily produces moral certainty or conviction in the unprejudiced mind. (Sec. 10500, Id.)

Further, the solution of any issue in a civil case may rest entirely upon circumstantial evidence; the law makes no distinction as to the probative value of this class of evidence and

direct evidence, and, if the circumstantial evidence in this case furnishes support for the claimant's theory, and thus tends to exclude any other theory, it is sufficient. (*Gilmore* v. *Ostronich,* 48 Mont. 305, 137 Pac. 378; *Exchange State Bank* v. *Occident Elevator Co.,* ante, p. 78, 24 Pac. (2d) 126.) In this class of cases the rule is that the burden of proving that the injury was the proximate cause of the condition of the claimant may be proved by circumstantial evidence or inferences having a substantial basis in the evidence. (1 Honnold on Workman's Compensation, 466, citing cases from Michigan, Illinois, West Virginia and Massachusetts.)

If, then, the fact that the claimant would not be in his present condition except for the fact that he received an injury by reason of an industrial accident is fairly deducible from the uncontroverted testimony, the evidence preponderates against the finding of the board, and warranted the district court in declaring that the findings against the claimant "are unreasonable under the circumstances." (Sec. 2960, Rev. Codes 1921.)

The reasonable deductions from the record are as follows: Carl Moffett, a strong, healthy young man, suffered a traumatic injury arising out of and in the course of his employment, against the effect of which he was duly insured. He was thereafter never again in condition to follow his vocation. His physical deterioration commenced with the injury, and followed the usual course of the affliction from which he now suffers, until he was totally and permanently disabled.

While medical science has not yet been able definitely to determine the cause of such affliction in the individual patient, the pathology of the disease shows that it follows trauma, infection or emotion, and therefore the authorities adopt the theory that it is caused by any one of these experiences.

In the instant case the testimony rules out emotion and the type of infection which the medical experts used principally as the basis for their deductions. If gonococcus germs were present in the young man's system—a conclusion left somewhat in doubt by the testimony—it was not shown that such an infection is known to be followed in a young man by the "old

man's disease'' with which the claimant is afflicted. Thus the evidence practically rules out all theoretical causes but that of trauma.

In a case wherein tremor followed injury, the supreme court of New York held that, if the evidence ''practically excluded all other causes up to the time of the accident,'' the inference that the accident was the cause of the condition is justified and not speculative. (*McClain* v. *Brooklyn City R. R. Co.*, 116 N. Y. 459, 22 N. E. 1062.)

However, if we concede that, at the time of the injury, or shortly thereafter, evidence appeared of a slight gonorrheal infection, and it is fairly inferable that the dire effect of the infection would not have resulted had it not been that the claimant's body was weakened by the injury, ''a minor thing,'' as suggested by Dr. Rodes, contributing to the cause of claimant's condition, liability would attach as though the injury was the sole cause of the condition. (*Nicholson* v. *Roundup Coal Min. Co.* and *Murphy* v. *Industrial Accident Board,* above.)

The following statement from *Hartford Accident & Indemnity Co.* v. *Industrial Accident Commission of Utah* is pertinent here: ''The testimony of these physicians that trauma may lead to or result in the disease from which the applicant was suffering, considered in connection with the general condition of his health at and prior to the date of the injury, and the further fact that there is no explanation of the cause of the disease from other sources, in our judgment, is evidence sufficiently substantial and competent to sustain the deduction * * * that the accident caused the affliction.'' (64 Utah, 176, 228 Pac. 753, 754.) In other words, the rule that the claimant must show that the injury was the proximate cause of the affliction does not require demonstration of an undemonstrable proposition, but merely that he produce sufficient evidence, direct, indirect or circumstantial, to cause in the unprejudiced mind a conviction that such was the fact.

We find the evidence sufficient to support the judgment in the claimant's favor.

The trial court erroneously awarded the claimant compensation at the rate of $18 per week. The maximum compensation allowable for "total disability permanent in character" is but $15 per week. (Sec. 2913, Rev. Codes 1921, as amended by Chap. 121, Laws of 1925.)

The proceeding is remanded to the district court of Gallatin county, with direction to modify the judgment by reducing the award made in conformity with the above-cited provision, and, as modified, the judgment will be affirmed.

Mr. Chief Justice Callaway and Associate Justices Angstman and Stewart concur.

Mr. Justice Anderson: I dissent from that portion of the the opinion of the court wherein it is held that the circumstantial evidence adduced on the hearing is sufficient to sustain the judgment of the trial court. I concur in the statements in the opinion holding that the so-called opinions of the doctors are too speculative and conjectural to form the basis of findings.

If, under the facts in this case, owing to the lack of knowledge, the opinions of the doctors to whom the essential facts were submitted in hypothetical questions are unworthy of consideration, how can a court draw a conclusion from these same facts which is of superior weight to that of the doctors? I think the conclusion drawn by the court from the facts is based entirely on speculation and conjecture.

True, "the solution of any issue in a civil case may rest entirely upon circumstantial evidence. (*Culbertson* v. *Hill,* 87 Mo. 553.) All that is required is that the evidence shall produce moral certainty in an unprejudiced mind. (Rev. Codes, [1907] sec. 7856.) In other words, when it furnishes support for the plaintiff's theory of the case, and thus *tends* to exclude any other theory, it is sufficient to sustain a verdict or decision. (*Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.)" (*Gilmore* v. *Ostronich,* 48 Mont. 305, 137 Pac. 378, 379.)

The use of the word "tends" does not contemplate conjecture. It contemplates the testimony has the tendency to establish the theory, which will support claimant's case, and not some other theory inconsistent therewith. If the conclusion to be reached from the testimony is equally consonant with some theory inconsistent with the theory of claimant's case, then the circumstantial evidence does not tend to prove his case. (*Shaw* v. *New Year Gold Mines Co.,* supra.) Any inference drawn from such testimony, however shrewd, is still in the realm of speculation.

Claimant suffered an industrial accident, resulting in a traumatic condition, prior to which he was a strong, healthy man. Soon after this accident he developed either paralysis agitans or Parkinsonian syndrome, the cause of which is unknown to medical science. The theoretical causes are trauma, infection and shock. The claimant suffered a trauma at the time of the accident.

The majority opinion states, in effect, that it was not shown that there was any infection present. The record discloses that at the time claimant, following his injury, presented himself to the doctor for treatment, he complained of an urethral discharge. The doctor in attendance at that time testified that he made a slide of this discharge, and from a microscopic examination found "conococcus" germs present. He prescribed medicines which are used for the treatment of cases of gonorrhea. A search of dictionaries, both medical and otherwise, fails to reveal any germ known by the name "conococcus," or any such word. Apparently in the preparation of the record, inadvertently, in the spelling of the name of the germ, the first letter of the name of the germ testified to was changed from "g" to "c." "Gonococcus is the name applied to the "bacterial coccus organism of gonorrhea." (Dorland's Medical Dictionary.) An infectious disease "is one caused by parasites such as bacteria," etc. (Id.) The error is clearly typographical.

The opinion of the court declares that the evidence was insufficient to establish the presence of infection. To my mind,

if the testimony of the doctor is to be believed, the presence of an infection is clearly established. There being, therefore, present two theoretical causes, either of which may cause the malady of which claimant is suffering, the testimony tends equally to support either of these theories, one theory being favorable to claimant, the other not. Therefore any conclusion from the testimony that the theoretical cause of the disability was trauma is speculative and conjectural.

Furthermore, most courts hold that the showing of an industrial accident, following which some disability arises not shown to have any connection with the injury suffered at the time of the accident, is insufficient to sustain the burden imposed on the claimant to prove that the industrial accident was the proximate cause of the disability. (*State ex rel. Johnson Hardware Co.* v. *District Court*, 145 Minn. 444, 177 N. W. 644; *Phillips* v. *Okey*, 111 Kan. 732, 207 Pac. 1106; *Kade* v. *Greenhut Co.*, 193 App. Div. 862, 185 N. Y. Supp. 9; *Donovan* v. *Alliance Elec. Co.*, 195 App. Div. 678, 186 N. Y. Supp. 813; *Shaw's Case*, 126 Me. 572, 140 Atl. 370; *Dehn* v. *Kitchen*, 54 N. D. 199, 209 N. W. 364; *Edge* v. *City of Pierre*, (S. D.) 239 N. W. 191.)

In my judgment, there being no evidence in the record, either direct or circumstantial, which was within the recognized principles of the law of evidence sufficient to justify the conclusion reached by the trial court, the cause should be reversed.

Rehearing denied November 21, 1933.