WOIN, Respondent, *v.* ANACONDA COPPER MINING CO.,
APPELLANT.

(No. 7,372.)

(Submitted January 29, 1935.  Decided February 25, 1935.)

[43 Pac. (2d) 663.]

*Mr. D. M. Kelly, Mr. D. G. Stivers, Mr. John V. Dwyer, Mr. John A. Groeneveld* and *Mr. J. T. Finlen, Jr.,* for Appellant, submitted a brief; *Mr. Finlen* argued the cause orally.

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted a brief; *Mr. Shone* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

On May 2, 1924, Jack Woin, an employee of the Anaconda Copper Mining Company, was injured while engaged in his work as a miner at the Tramway mine in Butte. The company was operating under plan 1 of the Workmen's Compensation Act (Rev. Codes 1921, sec. 2816 et seq., as amended). Woin was in good health and ordinary physical condition at the time of the accident. He had worked in and about the mines

at Butte since about the year 1907. Most of this time he had worked at the Tramway. When the accident occurred Woin and his partner were engaged in cleaning waste matter from a raise in the mine. The waste became clogged in a chute, and Woin undertook to "start it." In the operation he stepped on a rock and fell into what was denominated "the gob." He struck his left hip on a post or piece of timber which had been thrown into the gob. He was removed to St. James Hospital, where the disabled employees of the mine were then treated under contract. One of the hospital doctors treated his injury and caused an X-ray picture to be taken. This picture was mislaid or lost, and was never introduced in any of the proceedings. Dr. Shields, who caused it to be taken, testified that the picture showed a fracture of the left pubic bone and a slight separation of the right sacro-iliac joint.

Woin remained in the hospital under treatment until June 27, 1924. At that time he was discharged and allowed to go home, but did not return to work until about the first part of October of the same year. At that time he was put back to work but at a different and easier job. He testified that after he was able to be around he went to the mine and was told by the assistant foreman that he had better come back and go to work as a car oiler; that that was an easier job than he had before and he could try it out and see if he could stand it; that his compensation was only $60 per month and that, if he could hold the job, he could make at least $100 and he would be that much better off; that it would be easier for him to get on at that particular time than later because they were opening up some new work and were going to put on some men anyhow. Woin said that he told the mine official that he was not sure that the doctor would let him go back to work; that he was not feeling well yet, but that he would go and find out; that he went immediately to the hospital where he saw the doctor and explained the matter. He told the doctor of the easier job and of the danger of losing a chance to go back to work unless he accepted the position at that time. He stated that the doctor said to him, "I don't like for

you to work yet," and that he answered, "I will go and try anyway"; whereupon the doctor said, "All right." He testified further that he went to the mine and talked to another official, who told him to try it out for a few days and if he could do the work he could stay; that it was better for him to get more money in the nature of wages than to continue on compensation.

Woin then went to work as a car oiler. While this work was not as heavy as mining, it did involve actual labor, including the lifting and carrying of grease, oil and lubricating equipment. He testified that he continued to suffer from his injuries, but that he did not stop work; that he made numerous calls to see the doctors and received treatment, including salve to rub on his injured hip, but that he gradually got worse and suffered more and more. He said, "I got more pain in my hip; then it get pain all the time, to oil car. * * * I can't bend, can not stand that; I have to put leg way back * * * when I bend to oil cars."

Woin testified that after about three years on the oiling job he reported to the mine officials that he could no longer do the work; whereupon he was given a job as a yard or clean-up man. On that job he had to pick up trash and clean up after the loading of ore cars and timbers. He stayed on that job for about a year, but claimed that he kept feeling more and more pain, and finally decided that he could not stand that work. He then stayed at home for a short time, and was then given a job as a sort of watchman in the "dry," a room where the men changed clothes. He worked in the "dry" for about a year, but his physical condition continued to get worse until he got so that he could not walk up and down the stairs, and he claimed that he had to use a cane in order to get around.

Witnesses who had known Woin as a husky, healthy man prior to the accident of 1924 testified that he was in bad condition during his work in the "dry," and that he used a cane. Some of the mine people testified that they did not see him use a cane, but that he was not in good physical condition,

but rather thought that he was feeble. One McGlone, foreman at the mine, testified that he did not see him use a cane until the last few months he was at the mine; that he thought he had "miner's con" or silicosis; that he looked like a man who had spent too much time in the mine. In any event, he said, he seemed to be going down hill and failing constantly.

Finally, about March 28, 1930, Woin took a hospital slip for entrance into the hospital. At that time the Murray Hospital was the place of hospitalization for the miners employed in the Tramway mine; that hospital still has the contract, and Woin has remained therein as a patient ever since. It is generally admitted by all, and it was found by the Industrial Accident Board, that Woin is totally disabled and will never again regain his physical health.

It appears that at the time of the accident in 1924 the St. James Hospital had the contract for taking care of disabled employees working at the Tramway mine. Between 1924 and 1930 this contract was taken over by the Murray Hospital, and Woin went to that hospital in 1930. It is contended, though not important here, that if the existing incapacity is the result of the 1924 accident, St. James Hospital should bear the obligation of taking care of the man, but if the disability does not relate back to that event, but has resulted from some other or later cause, then the patient is properly a charge of the Murray Hospital.

It appears that soon after the accident of 1924 claim was made to the Industrial Accident Board, and compensation was paid for the period beginning May 1 and ending about October 1, 21 weeks and 5 days, amounting to the sum of $273. The rate was $12.50 per week, and was the maximum amount allowed by law at the time. On the sixth day of November, 1924, after Woin had gone back to work, he signed a receipt in full settlement and satisfaction.

About February 1, 1933, Woin filed a petition with the Industrial Accident Board, praying for compensation and rating of disability. Therein he set forth the fact of the original injury of May 2, 1924; the other facts, as hereinbefore out-

170

lined, relative to his return to work after the accident, and his final entry and confinement in the Murray Hospital. In the petition it is alleged that his condition is getting worse and that he is without chance of recovery; that he is totally and permanently disabled for life as a direct and proximate result of the injury of 1924; that he was earning $4.75 per day at the time of the accident, and that he had always been capable of doing so previous to that time. The employing company filed an answer, which admitted that there was an accident on May 2, 1924; alleged that Woin received an injury resulting in a fracture of the inferior ramus of the left pubic bone and a strained right sacro-iliac joint; admitted the treatment at the St. James Hospital, but denied that the condition of the patient was the result of the accident of 1924; alleged that Woin made application for compensation as the result of the 1924 injury and was paid in full therefor; that he recovered from that injury and returned to work. The answer generally denied responsibility. An appropriate reply was filed by the claimant.

The cause came to hearing before the board at Butte on May 10, 1933. Woin's case consisted of his own testimony detailing the particulars of the accident, the fact of his continued disability, and his activities since the date thereof. He produced witnesses to show his good physical condition prior to the accident, and two doctors who testified as to his then physical condition, and their opinions as to the reasons therefor. Dr. C. E. Emery testified that he believed that Woin was afflicted with tuberculosis of the left hip joint; that he was permanently disabled and that the condition was due to traumatism, and that it was the result of the injury of 1924. Dr. J. L. McCarthy gave like testimony, and expressed the opinion that the condition was due to the original injury.

Doctors H. W. Gregg, J. C. Shields and Edward C. Person testified on behalf of the defendant company, and gave it as their opinions that the existing condition of Woin's hip was not due to the injury of 1924. Dr. Shields testified to an X-ray picture taken in 1928, and based part of his testimony

thereon. A controversy arose over this picture, and there were differences of opinion as to what it showed.

After the evidence was all presented to the board, the matter was taken under consideration, and later the board made findings of fact and conclusions. The findings covered the facts and found the total disability of Woin, but held that he had failed to prove that his condition was due to the accidental injury of May 2, 1924. His application for compensation was therefore denied. Application for a rehearing was made and denied, and an appeal was taken to the district court of Silver Bow county.

Before the day of trial of the cause in the district court, counsel for Woin filed a motion requesting the court to grant permission that the cause be tried *de novo* upon the record as certified to the court by the board and upon additional testimony to be introduced by plaintiff at the trial. Notice of this motion was served on counsel for defendant, and in due time the motion was considered and decided by the court. The motion set forth several reasons upon which the request for the right to take additional testimony was based. These reasons included the following: That claimant had been confined in the Murray Hospital ever since the previous hearing; that the hospital was under contract with the mining company; that claimant desired doctors of his own choice to make a physical examination of him; that he was surprised at the hearing before the Accident Board by the appearance of doctors for the Murray Hospital and by their testimony that his condition was not the result of the original accident; and that he desired in other ways to produce additional testimony pertinent to the case, particularly to establish the fact that his then condition was the result of the 1924 accident. Objections to this motion were filed, and the matter was presented to the court. The objections were overruled and the motion was granted. The trial then proceeded. Some of the witnesses who testified for Woin before the board, testified again in court, but not all of them. Woin himself gave testimony and reiterated his previous statements with some additions. Doc-

tors McCarthy and Emery again gave professional and expert testimony in his behalf. Doctors Gregg and Shields were again witnesses for the defendant. Doctors Herbert D. Kistler and R. C. Monaghan were new witnesses on behalf of the defendant. The testimony of Doctors McCarthy and Emery differed little from that given before the board; such was also the fact with relation to the testimony of Doctors Gregg and Shields.

It is important to note that Dr. Kistler, head of the Murray Hospital, testifying for the first time in the district court, said Woin was afflicted with multiple arthritis; that it was a chronic inflammatory, low-grade process, with destruction of the joint itself. He said the hip-joint had been entirely destroyed, and that the left part of the left femur or thigh bone was entirely gone. He asserted that the condition was not due to the injury or to trauma; that in his opinion the condition was due to some low-grade infection which had gotten into the system either through the teeth or the tonsils or some other source, and settled in the joints; that it was just an ordinary bacterial infection; that he did not know any scientific name for it because he could not tell what individual organism it was. The witness did, however, testify that certain tests had been made, including the Wasserman test for syphilis, and that they had shown negative results.

Dr. Monaghan testified that Woin was suffering from an infection involving the hip joint and the knee joint on the left side. He said that he did not personally examine him but was present when he was examined by others, and that he saw the X-ray photograph. He did not attribute the condition to trauma or to the injury, but said that such infections, while not ordinarily resulting from trauma, do so in some cases.

Dr. Gregg diagnosed the condition as chronic destructive multiple arthritis. He explained that in his opinion this condition did not primarily come from an injury but from an infection which may have started from the seat of the injury. He said, "I don't think the destructive arthritis is a cause at all; destructive arthritis is the condition which he has now and that condition resulted from infection." He further said

that the actual condition came from the wearing or rotting away of the bone and the inflammation set up as a result; that it might come after an injury or it might come without any injury at all.

Dr. Shields testified more elaborately than the others. He was the physician who attended Woin at the time of the 1924 accident. He detailed the progress of the case, and told of the injury, the treatment, and the discharge of the patient. He said that he saw Woin in 1927; that at the time he complained of a chest condition and that this condition was diagnosed as silicosis; that he returned again in 1928 while he was still working at the mine, and was treated for a puncture wound in the left foot; that later, in September of that year, he came back to the hospital "complaining of his old injury, that he had pain about the pelvis"; then it was that the X-ray picture was taken about which the controversy arose. The doctor claimed that the X-ray picture showed a good union at the point of the fracture of the pubic bone, and that there was no displacement and no arthritis in the hip at that time. Other doctors claimed that the picture did not show a perfect condition. The witness said Woin was suffering from destructive arthritis at the time of the trial. He did not believe it was due to injury. He did not think that the member was affected by tuberculosis.

The district court found the issues in favor of Woin and held that the findings of the board were unreasonable and should be set aside; that the condition of Woin was the result of the accidental injury of May 2, 1924; that he was entitled to receive compensation for 400 weeks at $12.50 a week, payable monthly, without any deduction for compensation theretofore paid during the healing period; that at the end of the 400 weeks he should receive $5 per week, payable monthly during the period of total permanent disability, and that there was due at the time of the entry of judgment 400 weeks' compensation from March 28, 1930, to the date of the decision.

The specifications of error involve but three propositions: (1) The right of the court to permit the introduction of addi-

174

tional evidence at the trial in the district court; (2) the sufficiency of the evidence to sustain the judgment in favor of Woin; and (3) the question of the amount of the compensation.

The application for permission to take additional testimony ██ in the district court was tendered by an unverified motion and was not supported by affidavits, or otherwise. Appellant vigorously asserts that the court committed error in allowing the introduction of evidence at the trial. It is contended that under the provisions of section 2960, Revised Codes 1921, under which such actions are heard in the district court, additional evidence was not admissible unless for good cause shown; that there was, in fact, no additional evidence introduced concerning the real issues in the case; that the evidence introduced was cumulative, repetitious and wholly unnecessary; that no evidence could be introduced unless for good cause shown; and that it was necessary to make an independent showing of good cause before the evidence was admissible.

The matter of taking additional evidence in the district court has been before this court on several occasions. In the case of *Sykes* v. *Republic Coal Co.*, 94 Mont. 239, 22 Pac. (2d) 157, 159, we construed the section now under consideration, and said: "While the statute contemplates merely a review of the record before the board, unless there is some special reason or 'good cause' for the reception of additional evidence, and in no case permits a full trial '*de novo,*' * * * all parts of the Workmen's Compensation Act are to be given a liberal construction, * * * and in the absence of some statutory requirement as to the manner in which the discretion of the court shall be invoked, the informal presentation of persuasive reasons why additional testimony should be taken, made in the presence of opposing counsel who thus has an opportunity to be heard on the subject, is a sufficient showing of 'good cause.'"

Counsel complain that, in reality, the trial in the district ██ ██ court in this instance was a trial *de novo,* and therefore there was error. We cannot agree with counsel that such

was the case. Neither are we willing to adopt a technical rule of practice and procedure in the premises. The reasoning of counsel would lead us to the adoption of the technical rules of procedure governing the trial of actions generally in the district court. In the face of the statute and of the Act as a whole, and of the decisions on the subject generally, we do not think that such a construction would be warranted.

While it is true that there may be some confusion in the statute by the inclusion of the term *"de novo,"* that confusion has been explained by this court. In *Dosen* v. *East Butte Copper Min. Co.,* 78 Mont. 579, 254 Pac. 880, the court explained that the term *"de novo,"* as used in the statute, is not synonymous with the familiar trial which takes place in a district court on appeal from a justice's court. The court there attempted to emphasize the fact that after all the statute merely meant that all the evidence taken by the board, and all of the additional evidence taken in the court, should be considered together, and that, upon that evidence as a whole, the court should render a judgment. We do not see how we can make the matter any plainer than it has been made in the cases just cited, and in other cases decided by this court.

Neither do we believe that error was committed by the district court in the admission of additional testimony. It is true that the testimony was somewhat repetitious, but there was not a full trial *de novo,* and therefore the action of the court did not impinge upon what this court said in the case of *Sykes* v. *Republic Coal Co.,* supra.

After all, the major question for decision in this case involves the sufficiency of the evidence to sustain the judgment. Plaintiff contends that because additional evidence was produced before the district court, this court must indulge the presumption that the judgment of the district court was correct and must be upheld, unless clearly shown to be erroneous; citing *Herberson* v. *Great Falls Wood & Coal Co.,* 83 Mont. 527, 273 Pac. 294.

It is true, as we have indicated, that the bulk of the evidence relied upon by plaintiff was taken before the board and

was certified to the district court. While some witnesses were sworn, the additional testimony taken in the district court was in reality but repetition and elaboration. However, there was some new testimony. We might, therefore, say, as we did in the case of *Moffett* v. *Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973, 978, that such evidence as was adduced before the court was unimportant, and then consider the matter as though presented upon the record. However, that would not meet the exact situation as it exists here.

The rules governing these matters have been announced by this court on several occasions. Recently, in *Birdwell* v. *Three Forks Portland Cement Co.*, 98 Mont. 456, 40 Pac. (2d) 43, 47, we tried to make the matter plain, and said that in order for a claimant to prevail, it was necessary for him to prove by a preponderance of the evidence that he suffered an industrial accident, and that the injury was the proximate cause of his present condition. We also quoted the familiar rule to the effect that: "The cause went to the district court with the presumption that the board had decided correctly. * * * When there is conflict in the evidence, if it does not appear that the evidence clearly preponderates against the findings of the board, the judgment of the court reversing the order of the board must be reversed, and the decision of the board dismissing the application must stand."

We may say here that whatever may be the state of the record, or whatever may have been the order of the trial court, this court will not reverse the finding of the district court except where the evidence clearly preponderates against it. If the findings of the district court were made upon the identical record before the board, then this court would be in just as advantageous a position to determine their correctness as the district court would be. (*Morgan* v. *Butte Central Min. & Mill. Co.*, 58 Mont. 633, 194 Pac. 496.)

In this case it is not particularly important as to who is entitled to the favorable presumption. As we have indicated, the plaintiff relies upon the principle that a presumption exists in favor of the judgment of the district court, while the de-

fendant insists that, because of the procedure followed here, the presumption is in favor of the findings of the board. Wherever that legal presumption may rest, there is still the obligation upon this court to review everything and decide in whose favor the weight of the evidence preponderates.

Plaintiff relies upon *Moffett* v. *Bozeman Canning Co.,* supra, and *Birdwell* v. *Three Forks Portland Cement Co.,* supra, as presenting similar propositions and, therefore, as controlling. We appreciate the force of the decisions in these cases. This case presents a plainer situation, in some respects, than either of the other cases. In the *Moffett Case,* there was the claim that the disability or the disease could be traced to gonorrheal infection. Here there is no evidence to support any claim of ▮ any other specific reason for infection. It is true that the doctors testifying partly as expert witnesses, and partly from examinations of plaintiff, did express the opinion that Woin's disability did not relate to the accident of 1924, but all of the attempted explanations made by them as to what other conditions or events might be responsible for the condition were mere speculations. The most specific suggestion was made by Dr. Kistler, wherein he said that the condition was the result of some low-grade infection brought into the system through the teeth, tonsils, or from some other source. Anyone can appreciate that this statement of the doctor was speculation. While it was an opinion, it is the kind of an opinion that this court frowned upon in the *Moffett Case.* There the court discussed just such opinions, and said they were too speculative and conjectural to afford a basis for a finding as to the cause of the disease. Of course, it must be remembered that the burden is not strictly upon the defendant to prove exactly what brought about the condition of plaintiff. The burden is still upon plaintiff to establish by a preponderance of the evidence the fact that the condition resulted from an accidental injury. Here the injury, we may say the accident, of 1924 was more positively and definitely established, together with its actual and undoubted results, than was the accident in the *Moffett Case.* The accident of 1924 and the

fact of positive injury to Woin is certain and more definite and a more typical industrial accident than either the one that occurred to Moffett, or the one that occurred to Birdwell at the cement plant. The Moffett accident was not so serious and positive, and the results were not so definite immediately after the occurrence as in this case. In the *Birdwell Case,* a major question which this court was called upon to decide was whether there was an industrial accident at all; that is, whether heat prostration occurring under the circumstances of the case actually constituted an industrial accident. Here there is no question but that there was an industrial accident, and that it was followed by incapacity, such an incapacity as caused the immediate hospitalization of the claimant and was the basis of payments under the compensation laws of the state. The question here is whether the recovery from that accident was complete, or whether the admitted total disability now existing in Woin's case can be connected with and traced to the accident that admittedly occurred in 1924.

It is an uncontroverted fact that Woin was a healthy, rugged and physically fit individual at the time of the accident in 1924. It is admitted that he was injured, and that he was treated at the hospital. It is admitted by everyone that he is totally incapacitated at this time and has been for several years last past; that is, since 1930. We think that the evidence is reasonably plain, and that it preponderates in favor of the contention that Woin never recovered from the accident of 1924; that he was never free from pain and never cured of those injuries. The evidence is reasonably clear and very little controverted that he returned to the mine before he had entirely recovered; that the doctor in charge of his case reluctantly consented to his going back to work at a lighter job; that the mine official recognized his incapacity and made it a point to give him an easier job; and that he was successively given easier jobs until he finally came to a point where he could not perform even comparatively light work. It is rather significant that Woin did not insist on remaining upon compensation, but preferred to accept the

suggestion of the mine superintendent that he return to work and waive the compensation. He did waive the compensation for a period of years extending from October, 1924, when he returned to work, until the date of his entrance into the Murray Hospital. The evidence is uncontroverted that during a substantial period of that time he worked under rather adverse circumstances, and that he suffered pain and inconvenience as the result of his activities. These facts must be taken into consideration, along with the evidence of the witnesses who testified as to his physical injury and condition. While the four doctors who testified for defendant gave it as their opinion that the condition did not result from the accident and that such condition did not generally result from trauma or injury, nevertheless they all admitted that such a condition might result from injury. The two doctors who testified for plaintiff gave it as their positive opinions that the condition did result from the accident. Under the circumstances of this case we then come to the same sort of condition that existed in the *Moffett Case*. The evidence as a whole, including all of the facts and circumstances adduced in the case, must be weighed and considered. In the *Moffett Case*, we said: "The law makes no distinction as to the probative value of this class [circumstantial] of evidence and direct evidence, and, if the circumstantial evidence in this case furnishes support for the claimant's theory, and thus tends to exclude any other theory, it is sufficient"—citing *Gilmore* v. *Ostronich*, 48 Mont. 305, 137 Pac. 378; *Exchange State Bank* v. *Occident Elevator Co.*, 95 Mont. 78, 24 Pac. (2d) 126, 90 A. L. R. 740.

In the *Moffett Case* we held that the burden of proving that the injury was the proximate cause of the condition might be met by circumstantial evidence. And so we say here that a fair and comprehensive consideration of all of the evidence and of all of the facts and circumstances appertaining to Woin and his physical condition from the second day of May, 1924, down to and including the date of the trial in the district court, must lead the unprejudiced mind to the belief

that these things preponderate in favor of the finding of the district court; that the disability existing at the time of the judgment was reasonably traceable to, and the result of, the injury received by Woin at the Tramway mine on May 2, 1924. (See *Williams* v. *Brownfield-Canty Carpet Co.,* 95 Mont. 364, 26 Pac. (2d) 980; *Birdwell* v. *Three Forks Portland Cement Co.,* supra.)

Defendant contends that "the district court erred in entering judgment for 400 weeks at the rate of $12.50 per week, without any deduction for compensation theretofore paid claimant." It appears that claimant received compensation at the rate of $12.50 per week for a temporary total disability from May 2, 1924, until about October 1, 1924, approximately 21 weeks, and the court held that he was entitled to further compensation at the rate of $12.50 per week (for permanent total disability) for 400 weeks from March 28, 1930, "without any deduction for compensation heretofore paid him during his healing period."

The question thus presented received the consideration of this court in the case of *Dosen* v. *East Butte Copper Min. Co.,* 78 Mont. 579, 254 Pac. 880, 887. It was there held that where a man suffered a temporary total disability, which later developed into a permanent partial disability, there were in fact two distinct classes of disabilities, one succeeding the other, and in making an award for the permanent partial disability no deduction should be made of the compensation previously paid for the temporary total disability. However, it was pointed out in that case that such result would not obtain where, as in the instant case, both the temporary and the permanent disability were of the same class (where both were in the nature of a total disability). In this connection the court there said: "The period of temporary total disability is that temporary period immediately after the accident during which the injured employee is totally incapacitated for work by reason of the illness attending the injury. * * * If complete recovery attends the patient compensation ceases. Under section 2912 it may never continue longer than 300

weeks. If the total disability proves not temporary, but permanent, payment is governed by section 2913. It was in fact a permanent condition, not a temporary one. There is no concurrent condition here, nor any double payment over the same period. The compensation is paid during the period of disability—the period of total disability—which shall not exceed 400 weeks, and after that at the rate of $5 per week.''

The above language of this court is controlling and conclusive of the question here under consideration. Claimant bases his claim for compensation for permanent total disability upon the injury which he received May 2, 1924. Therefore, such disability must of necessity relate back to the temporary total disability which arose out of the same injury. In other words, the temporary total disability finally became permanent rather than temporary; in effect, then, there never was any temporary total disability; it was rather a permanent total disability all of the time. For such total disability the period of compensation shall not exceed 400 weeks. Accordingly, the period from May 2 to October 1, 1924, during which claimant received compensation, should be included in the 400 weeks. The fact that he did not draw any compensation from October 1, 1924, until March 28, 1930, would not change the legal effect of the situation in the least; neither would it affect or alter the ultimate award to which he was entitled for his total permanent disability. It is not to be understood, however, that claimant was entitled to compensation for the period from October 1, 1924, until March 28, 1930. The record discloses that he did not claim any compensation for that period. Indeed, he disclaimed any right to compensation during that time in order that he might accept employment, and he worked almost continuously during that entire period.

Claimant was entitled to an award of compensation for a period of 400 weeks from March 28, 1930, less the amount which he received as compensation from May 2, 1924, to October 1, 1924. The court erred in refusing to make that deduction from the award.

The cause is remanded to the district court of Silver Bow county, with direction to modify the findings and judgment in the respect mentioned with reference to the amount of the award. When so modified, the judgment will stand affirmed. Each party will pay his or its own costs incurred on this appeal.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.