MARY MURPHY, Plaintiff and Respondent, v. THE ANA-
CONDA COMPANY, Defendant and Appellant.

No. 9808.

Submitted September 9, 1957. Decided February 17, 1958.

321 Pac. (2d) 1094.

James T. Finlen, Wm. M. Kirkpatrick, William J. Kelly, Patrick L. MacDonald, R. Lewis Brown, Jr., Butte. William J. Kelly and R. Lewis Brown, Jr., argued orally, for appellant.

Maury, Shone & Sullivan, Butte, A. G. Shone, Butte, argued orally, for respondent.

MR. JUSTICE BOTTOMLY:

This is an appeal by The Anaconda Company, a corporation, from a judgment against it and in favor of the claimant, Mary Murphy, in an action brought by her under the Workmen's Compensation Act.

The claim for compensation was filed by Mary Murphy, the widow of one Dan Murphy, to recover compensation benefits alleged to be owing her by reason of the death of her said husband from an industrial accident. The widow's claim was denied by The Anaconda Company and a hearing was then had thereon before the Industrial Accident Board.

On May 21, 1956, the widow's claim for compensation benefits was denied by the Industrial Accident Board and from such ruling and decision the claimant, Mary Murphy, appealed to the district court of Silver Bow County.

At the trial in the district court, additional medical evidence, not theretofore submitted, was introduced and thereafter judgment reversing the decision of the Industrial Accident Board was rendered and entered wherein the district court held that the death of Dan Murphy was an industrial accident; that the employer, The Anaconda Company, was liable, and that Mary

Murphy, as the surviving widow of Dan Murphy, was entitled to the benefits of the Workmen's Compensation Act.

This is an appeal by The Anaconda Company from the judgment so entered.

The Anaconda Company specifies as error the action of the district court in: (1) In setting aside the findings of fact made by the Industrial Accident Board; (2) In setting aside the conclusion of law made by the Industrial Accident Board; and (3) In entering judgment for Mary Murphy, the claimant herein.

Appellant's specifications that the court erred in entering judgment for the defendant and denying plaintiff the relief prayed for is sufficient to raise the question of the sufficiency of the evidence to support the judgment entered. Bowles Livestock Commission Co. v. Midland Nat. Bank, 94 Mont. 467, 23 Pac. (2d) 967. See also Atlantic-Pacific Oil Co. of Montana v. Gas Development Co., 105 Mont. 1, 69 Pac. (2d) 750.

The two questions presented on this appeal are: (1) Was the evidence sufficient to sustain the district court's judgment, and (2) Was Dan Murphy's death due to an industrial accident suffered in the course of his employment by and with The Anaconda Company?

*Sufficiency of Evidence.* The evidence shows:

Dan Murphy was an office worker. On the morning of June 27, 1955, at about five minutes after he had commenced the usual duties of his employment at The Anaconda Company's Butte Mines office he collapsed. He was immediately taken to a hospital and there he died some twenty minutes after he was stricken. No autopsy was performed.

At the time of his death, Murphy was sixty-five years old. His prior medical history reveals that until about June 1, 1955, he was in good physical condition and worked continuously.

On June 6, 1955, Murphy was taken to St. James Hospital, given a physical examination and found to be suffering from virus pneumonia. At that time his heart was found to be "within normal limits." He had no past history or record of heart

disease or of having suffered any symptoms to indicate heart trouble of any kind.

On June 10, 1955, being the fifth day after his admission, Murphy was discharged from the hospital and sent home to convalesce. During his stay in the hospital he complained of pain in his right foot and leg. Because of such complaint Murphy's doctor made a special examination of the leg which included a "Homans" test. In this test the muscles of the leg are stretched, thereby placing tension on the veins in the leg, and making apparent any soreness which might be present. Should soreness be present it might be indicative of inflammation in a vein and such inflammation may lead to the building up of a thrombosis or blood clot in the vein. Although the test proved to be negative, the doctor ordered Murphy's leg bandaged.

On June 18, 1955, Murphy was re-examined. Thereafter he expressed a desire to return to work on June 20, 1955, and his request was granted. He worked June 20 and 21 without incident.

On the morning of June 22, 1955, after arising from bed, Murphy complained of pain in his right leg and had his wife bandage the leg to alleviate the pain. After the bandage was applied, Murphy ate breakfast and left for work. He was driven there by another employee. To get to the car, Murphy had to walk some 200 feet. After arriving at work he crossed the sidewalk and entered the door of the Mines office. At that time Murphy became and was on shift. His actions inside the office and at the time of his death were within the course and scope of his employment for The Anaconda Company. He was on Company premises.

Once inside, Murphy commenced his regular and usual duties. His first duty was to push a cart loaded with mail from near the front door of the office to a desk some seventy feet distant at the rear of the office. The cart weighed some seventy pounds and the mail therein weighed about thirty-four pounds. It required an exertion of nine and three-fourths pounds of force

to put the cart in motion, and an average of three and one-half to four pounds of exertion to keep it in motion. The cart was pushed forty-three feet. At that time a watchman came into the building and heard Murphy call out to him. Responding to the call, the watchman found Murphy slumped over a desk near where the cart was stopped. Murphy asserted he was dying, asked for water and requested the watchman to loosen his tie and shirt. He was having trouble breathing. His face had a dark color. He was taken to the hospital where, within some twenty-five minutes thereafter, he died.

It was upon this evidence the decedent's widow based her claim for compensation benefits upon the theory: That these facts show that her husband, Dan Murphy, during his illness with pneumonia, developed an inflammation in a vein in his leg; that as a result of this inflammation a thrombosis or blood clot built up at the point of inflammation; that this clot or a subsequent clot was present on the morning of June 22, 1955; that when Dan Murphy commenced work and exerted himself in pushing the mail cart, the strain of the exertion was sufficient to loosen the blood clot and allow it to flow freely through the venous system to the heart; that it was then pumped through the heart into the pulmonary region of the lungs where it lodged in the pulmonary vessels, blocking the vessels and causing Murphy's death.

Appellant in answer to the widow's claim asserted that Murphy's death was caused by a coronary thrombosis or occlusion, being the lodging of a blood clot or other matter in the coronary arteries of the heart, and that the work Murphy was performing at the time of his collapse was not a contributing factor to his death. Appellant also asserts that if death was caused by a pulmonary embolism, the labor then being performed by Murphy would not be a contributing factor to death from that cause. The medical testimony is represented by opinions given by various doctors in answer to hypothetical questions. This resulted from the fact that no autopsy was performed. There is testimony that in the absence of an autopsy it was impos-

sible to definitely determine whether the cause of death was from a pulmonary embolism or from a coronary thrombosis. The symptoms of each are most similar; they overlap and are not readily distinguishable.

After hearing all testimony and observing the demeanor of ██ the expert witnesses while on the stand, the trial judge determined and held the claimant's evidence sufficient to support her contention and theory that Dan Murphy died of a pulmonary embolism. In reviewing the record of the trial in the district court, the Supreme Court is bound by the rule announced and applied by it in various cases brought under the Workmen's Compensation Act to entitle a claimant to recover. "The law does not require demonstration or such a degree of proof as, excluding possibility of error, produces absolute certainty." Weakley v. Cook, 126 Mont. 332, 336, 249 Pac. (2d) 926, 928. See also Moffett v. Bozeman Canning Company, 95 Mont. 347, 26 Pac. (2d) 973; Williams v. Brownfield-Canty Carpet Co., 95 Mont. 364, 26 Pac. (2d) 980.

In construing our Compensation Act as commanded by our ██ statute, R.C.M. 1947, section 92-838, it must be construed liberally in favor of the claimant. Grief v. Industrial Accident Fund, 108 Mont. 519, 93 Pac. (2d) 961; Wirta v. North Butte Mining Co., 64 Mont. 279, 210 Pac. 332, 30 A.L.R. 964; Dosen v. East Butte Copper Mining Co., 78 Mont. 579, 254 Pac. 880. As this court stated in Spieth v. Stuart, 130 Mont. 216, 299 Pac. (2d) 106, 107, "This has been held to mean it [the Act] must be construed in favor of the claimant."

In Geary v. Anaconda Copper Mining Co., 120 Mont. 485, 489, 188 Pac. (2d) 185, 186, it was said that "when it [the statute, R.C.M. 1947, section 92-838] is open to more than one interpretation, one favorable to the employee and the other against him, we must give it the construction most favorable to the injured workman in order to carry out the humane purposes of the Act. Dosen v. East Butte Copper Mining Co., 78 Mont. 579, 254 Pac. 880; Grief v. Industrial Accident Fund, 108 Mont. 519, 93 Pac. (2d) 961." See also State ex rel. Mor-

gan v. Industrial Accident Board, 130 Mont. 272, 300 Pac. (2d) 954.

A recital of all the medical testimony would only add to the length of this opinion and serve no useful purpose. As before stated the medical testimony is to the effect that many of the symptoms at the onset of the attack are identical, such as cyanosis or a dark color, shortness of breath and pains in the chest. Murphy exhibited all of these symptoms. On the other hand, a symptom consisting of a severe leg pain as in Murphy's case which frequently precedes a pulmonary embolism is not a symptom associated with coronary thrombosis. The testimony is to the effect that chest pains are common symptoms as to both types of attacks, but usually in a coronary condition the pains in the chest become manifest for some time prior to the fatal attack, while in pulmonary embolism the chest pain usually occurs only at a time when the pulmonary region is affected, prior pain being centered at the initiating point of thrombosis. In the instant case the evidence shows that Murphy definitely suffered the leg pains and, while the thrombosis tests were negative before June 10, such results at that date do not rule out the existence of a thrombosis condition on the morning of June 22, particularly in view of the extreme leg pain on the latter date, being the date of his death. Murphy had no history of any previous chest pains or of any diseased heart condition. On June 6, upon examination by his doctor, Murphy's heart was found to be "within normal limits." He did not then complain of any heart trouble although under a doctor's care. In view of this evidence and the law applicable thereto, we hold that such evidence is sufficient to sustain the trial court's finding, that Dan Murphy died of a pulmonary embolism.

When, as here, the evidence is in direct conflict as to the immediate cause of death and there was no autopsy to resolve the conflict, then it becomes the duty of this court on the appeal to affirm where there appears sufficient evidence, which, if believed by the trial court, would sustain its findings and

judgment. This court's plain duty is to determine whether or not the trial court could reasonably reach the conclusion which it did. The rule is that stated in State ex rel. Ebel v. Schye, 130 Mont. 537, 305 Pac. (2d) 350, 357, namely: "When there is conflict in the evidence, if it does not appear that the evidence clearly preponderates against the findings of the court, the judgment of the court will be sustained. Compare Birdwell v. Three Forks Portland Cement Co., 98 Mont. 483, 40 Pac. (2d) 43, 47. This court will not reverse the findings of the district court except where the evidence preponderates against it. Compare Woin v. Anaconda Copper Mining Co., 99 Mont. 163, 43 Pac. (2d) 663, and Wieri v. Anaconda Copper Mining Co., 116 Mont. 524, 156 Pac. (2d) 838." In the instant case the trial court's finding is amply supported by the evidence.

The finding that pulmonary embolism was the cause of death establishes a definite causal relationship between the work being performed by Murphy and his death. A definite time is established for the occurrence of the aggravation causing the death. Death from pulmonary embolism, wherein the fatal attack occurred after the commencement of work and after Murphy "had exerted himself during the course of his employment," tends to negative a probability that some activity outside of his employment occasioned the breaking loose of the blood clot which was the ultimate cause of his death.

Although he had exerted himself prior to commencing his last shift of work, yet the speed with which a clot can travel to the lungs is such, that if prior exertion loosened the clot then it is highly probable that Murphy would have suffered the attack before he arrived at the office and entered upon the performance of the duties incident to his employment. Of course, the pushing of the mail cart required some exertion and the medical testimony, submitted to and relied upon by the trial judge, which the district court accepted, and which tends to establish that such exertion, due to Murphy's pre-existing condition, was the ultimate cause of his death.

The appellant asserts granting this, that recovery should still

be denied upon the ground that in order to recover under the Workmen's Compensation Act, it is necessary to prove that the workman was subjected to some *unusual* strain, stress or exertion beyond the mere employment itself, which unusual strain, stress or exertion causes or contributes to the internal failure. The appellant asserts that Dan Murphy's death was not caused by an injury as that term is defined in section 92-418, R.C.M. 1947, because he was doing his usual work in his usual manner and was not subjected to unusual strain, stress or exertion.

R.C.M. 1947, section 92-418, defines an *"injury"* compensable under our Workmen's Compensation Act as follows: " 'Injury' or 'injured' refers only to an injury resulting from some fortuitous event, as distinguished from the contraction of disease.''

A *"fortuitous event"* has been defined by this court as synonymous with "industrial accident." In Nicholson v. Roundup Coal Mining Co., 79 Mont. 358, 257 Pac. 270, 274, this court said that the word " 'fortuitous,' * * * means 'happening by chance or accident; *coming or occurring unexpectedly or without known cause;* chance; accident' (Webster's New International Dictionary)." Emphasis added.

The appellant here inaccurately contends that this court's holding in Rathbun v. Taber Tank Lines, Inc., 129 Mont. 121, 283 Pac. (2d) 966, 971, added the requirement that the unexpected occurrence, chance or accident must arise from or be brought about by unusual stress or strain in employment. We did not so hold in that decision but we did there hold that heart failure may be classified as an industrial accident. We also there held that the heart failure resulting when the workman's diseased heart condition was "accelerated and aggravated by the extraordinary stress and strain that Rathbun endured in his employment" constituted an industrial accident. The "extraordinary stress and strain" merely goes to the causal connection between the labor being performed and its effect. *Extraordinary* stress or strain is no more an accident, if it does not have an effect upon the workman, than is *usual* stress or strain.

"It is the unexpected and unintentional *effect* of the strain ▮ or exertion that is covered by the Workmen's Compensation Law as an injury 'by accident' * * *" Rathbun v. Taber Tank Lines, Inc., supra, 129 Mont. at page 283 Pac. (2d) at page 971, quoting from Gray v. Employers Mut. Liability Ins. Co., Fla., 64 So. (2d) 650, 651, and citing other cases to the same effect. In the Rathbun case, the element of extraordinary stress or strain causally connected up the labor being performed to the effect of such labor. But that decision does not say that if a causal connection is. shown between usual or ordinary work being performed and an industrial accident as the effect thereof that the workman· suffering such accident will not be entitled to compensation.

The Rathbun case holds an injury is accidental or results from fortuitous events where either the cause or the result is either unusual, unexpected or undesigned.

Here there is substantial evidence tending to show Dan Murphy's death was the unexpected result of the usual performance of his usual labor. The fact that he then may have been suffering from a pre-existing weakness does not detract from the right to recover compensation because "the employer takes the employee as he is." Peitz v. Industrial Accident Board, 127 Mont. 316, 264 Pac. (2d) 709, 712.

Is recovery barred because the labor the workman was performing was not unusual?

Larson, Workmen's Compensation Law, Vol. 1, section 38.20, page 519, quoted in the Rathbun opinion, states:

"A clear majority of jurisdictions now hold that when usual exertion leads to something actually breaking, herniating, or letting go, with an obvious sudden mechanical or structural change in the body, the injury is accidental."

Larson cites authorities from thirty-four states holding that injury resulting from usual stress or strain .is compensable. The decisions supporting this view are far too numerous to set out here. It is true some distinction has been made in some

208

jurisdictions in cases involving heart failure, but we do not have a "heart" case here.

Horowitz on Workmen's Compensation, 88, 89, says:

"Suppose an *ordinary or usual strain* produces an unusual result, is the resulting injury by accident? It is now well established that ordinary and usual exertion at work resulting in injuries is compensable. Awards have been upheld on the basis of accidental injuries where the strain in tightening a nut in the ordinary manner caused an aneurism to break; or where shoveling snow precipitated a heart attack; so too, a pulmonary hemorrhage precipitated by the usual work of loading paint for two and one-half days. England held it was error to refuse an award because the workman had left the heavier work and was doing light work when the injury occurred; holding that a light strain causing a ruptured aneurism of the aorta was as compensable as if caused by a heavy strain."

In Bryant Stave & Heading Co. v. White, Ark. 1956, 296 S.W. (2d) 436, 439, where an employee aggravated a prior back injury while doing usual work, the court said:

"A very substantial majority of the courts of this country have adopted and followed the English rule and hold that an injury is accidental where either the cause or the result is unexpected or accidental, although the work being done is usual or ordinary. * * *

"* * * In our opinion the majority rule is sound and supported by the better reasoned cases. As Justice Wade pointed out in Purity Biscuit Co. v. Industrial Commission, supra, 115 Utah 1, 201 Pac. (2d) [961], 969: 'If an unexpected internal failure is an accidental injury, such failure caused by ordinary exertion is as much accidental as where caused by overexertion. It is even more clear that the internal breakdown is accidental, in that it is not expected, unintentional and undesigned, where it is caused by ordinary exertion than where it is caused by overexertion, because we cannot as readily expect that ordinary exertion will cause an internal failure as we can that overexertion will produce that result. * * *

" 'The fact that overexertion is more apt to cause an internal failure than is ordinary exertion is no reason why we should require proof of overexertion to sustain an award. To make such a requirement would be to change the substantive law because in some cases the proof may not be sufficient. In many cases the proof that the exertion did cause the injury might be conclusive but under such a rule the applicant could not recover because he did not show overexertion. In a borderline case where the other proof is the same it might well be that proof of ordinary exertion would not be sufficient to sustain a finding that the exertion caused the injury, where if overexertion were shown the proof might be sufficient. But there is nothing in the statute which would justify a holding that an injury is compensable where overexertion is shown but is not compensable where only ordinary exertion is shown, *provided that in both cases it is shown that the exertion causes the injury.'*

" '* * * we hold that an accidental injury arises out of the employment when the required exertion producing the injury is too great for the person undertaking the work, whatever the degree of exertion or the condition of his health, provided the exertion is either the sole or a contributing cause of the injury. In short, that an injury is accidental when either the cause or result is unexpected or accidental, although the work being done is usual or ordinary.'' Emphasis supplied.

This case is quoted with approval in the recent Michigan case of Sheppard v. Michigan Nat. Bank, 348 Mich. 577, 83 N. W. (2d) 614, which case reversed Michigan's previous position and held the worker entitled to compensation where she suffered an unexpected mishap while doing her ordinary work in her ordinary way. And to the same effect see Coombe v. Penegor, 348 Mich. 635, 83 N.W. (2d) 603.

In the recent Idaho case of Lewis v. Department of Law Enforcement, Idaho 1957, 311 Pac. (2d) 976, 978, the question of whether or not the employee had to be under unusual stress or strain was presented. The court there said: "It is unneces-

sary that the claimant be engaged in some unusual work or that there be a slipping, falling or some sudden or violent accident preceding the injury before it is compensable. If the claimant be engaged in his ordinary, usual work and the strain of such labor becomes sufficient to overcome the resistance of claimant's body and causes an injury, such injury is compensable. And although the claimant was suffering from a pre-existing defect such as an aneurism, if the strain aggravates and accelerates the condition and causes or contributes to the injury, such injury is compensable."

The above decisions from Michigan, Arkansas and Idaho are representative of the application of the majority rule that the work, being performed at the time of injury, need not involve unusual stress or strain in order to be compensable so long as the casual relationship of the work to the injury is established. Of particular significance however is the fact that the cited decisions evidence a departure from prior holdings of the respective jurisdictions which had heretofore ruled that to be compensable, the exertion put forth at the time of the injury had to be of an unusual or extraordinary nature. These departures were upon the grounds that the "unusual rule," under the law, is neither correct, equitable nor workable. The question of what is "unusual" for any individual workman considering the variables in the physical condition of workmen *generally* cannot be answered by any set rule. Such interpretation leads to discrimination and such discrimination violates the rule of liberality of construction which must be followed in workmen's compensation cases.

This court, following the English precedents from which our Workmen's Compensation Law was patterned, has already established, announced and applied the correct rule. See Rathbun v. Taber Tank Lines, Inc., supra.

It should be noted particularly, however, that in rejecting the unusual strain test, these cases still do not award compensation merely because of the fact that a man was injured or died.

All of these cases emphasize the basic problem, that is, *medi-*

*cal causation. It must be demonstrated that the injury arose out of the employment.* Larson, Workmen's Compensation Law, Vol. 1, section 38.83, page 565, states the rule as follows:

"There must still be an *unexpected result*, and there must still be *an exertion*—some exertion—capable medically of *causing* the collapse." Emphasis supplied.

We hold that an unexpected injury received in the ordinary ██ performance of a duty in the usual manner is an injury by accident under our Workmen's Compensation Law. An injury is accidental where either the cause or the result is unexpected or accidental although the work being done is usual or ordinary as long as the exertion is either the sole or a contributory cause of the injury.

In our opinion, there was sufficient evidence to sustain the ██ trial court's finding and ruling that Dan Murphy's death was caused by an industrial accident within the meaning of the Workmen's Compensation Act, and that the plaintiff is entitled to recover. Accordingly the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES, ANGSTMAN and ADAIR, concur.