FRED BECKTOLD, PLAINTIFF AND APPELLANT v. INDUSTRIAL ACCIDENT BOARD, DEFENDANT AND RESPONDENT.

No. 10012.

Submitted September 15, 1959. Decided March 18, 1960.

Rehearing denied April 7, 1960.

350 Pac. (2d) 383.

Kelly, Battin & Taylor, Billings, J. H. McAlear, Red Lodge, for appellant.

William T. Kelly, Billings, J. H. McAlear argued orally for appellant.

L. V. Harris, Helena, for respondent.

L. V. Harris argued orally for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

The claimant has appealed from the judgment of the district court of Carbon County wherein, the district court affirmed findings of fact and conclusions of law and an order of the Industrial Accident Board.

The claimant was injured in an industrial accident while employed at a sawmill in Carbon County on or about May 17, 1957. At that time his employer was enrolled under Plan Three of the Workmen's Compensation Act.

At the time of the injury the claimant was a single man, but has since been married. At the time of the injury the claimant was earning $10 per day, six days per week plus room and board.

The claimant's injury consisted of traumatic amputation of the thumb, index and middle fingers of the left hand at the metacarpal phalangeal joint. The Board and the district court found from a preponderance of the evidence that claimant's injuries were limited to the left hand below the wrist. According to the claimant's report to the Board initially, and also the employer's report, the claimant was squaring ends of lumber with a power saw when he caught his left hand in the blade, cutting off two fingers and the thumb. No claim was made of any other injuries. See R.C.M. 1947, § 92-807.

At the hearing before the Board, for the first time, the claimant stated that the accident happened as follows: "Well there was a weight on the saw that come off and swung out and caught me through here (indicating) and my hand and throwed me against the wall about eight feet and cut my hand."

Dr. Berg when asked by claimant's counsel as to whether the claimant recounted to him how it happened said, "He was somewhat confused about that portion of it. * * * I remember his—a little hemming and hawing, and he said he couldn't recall it exactly, something about a beam swinging back and forth."

It is immediately seen from claimant's own stories about

how the accident happened that there is self-contradictory evidence as to any other injuries.

Based on the claimant's claim for compensation, the Industrial Accident Board paid all medical expenses and determined that the claimant was entitled to $28 per week disability. This determination was made upon the basis of the loss of a hand. On September 30, 1957, the claimant wrote to the Board inquiring as to the possibility of making a lump-sum settlement because of the injury. Subsequent to this, on November 13th, the Board was informed by counsel in the present appeal that he was then representing the injured workman. The hearing was had before the Board, and findings of fact and conclusions of law were made. This determination by the Board was then appealed to the district court. Further testimony was elicited before the district court, and upon the conclusion thereof, the court made findings of fact and conclusions of law which affirmed the Board's findings. Upon this, judgment was entered and this appeal was taken.

The Board, after the hearing, awarded the claimant 200 weeks compensation. This award was based on the "specific injury statute", being R.C.M.1947, §92-709, as amended in 1957, and granted the claimant the amount of compensation he would receive under the provisions of this statute if he had sustained the loss of his entire hand at the wrist. Although claimant lost only his thumb and two fingers, the testimony at the hearing showed the award was justified. It is not disputed that the 200 week award is the award which the claimant should receive in view of the uselessness of the remaining two fingers and the rest of the hand. The claimant's position is that he suffered other injuries in addition to the loss of his thumb and fingers and as a result thereof has total partial disability entitling him to compensation for a maximum of 500 weeks. The injury to the hand, without anything more, had it occurred prior to March 13, 1957, would have sup-

ported the claimant's position based on this court's holding in Spieth v. Stuart, 130 Mont. 216, 299 P.2d 106.

In the Spieth case, this court held that the "specific injury statute", section 92-709, did not limit the number of weeks of compensation which could be awarded for a permanent partial disability covered by section 92-703, R.C.M.1947.

However in 1957, section 92-703 was amended. This amendment became effective March 13, 1957, and as pertinent reads: "* * * provided, however, that *compensation for partial* disability resulting from the *loss of or injury* to any member shall not be payable for a greater number of weeks than is specified in section 92-709 for the loss of such member." Emphasis added.

This amendment controls the amount of compensation due where the claim is confined solely to the amputated parts of the body. When other injuries are suffered in addition to those resulting in amputation, the specific injury statute would not provide the limitation of compensation if the additional injuries complained of were proven. The question presented on this appeal is simply one of whether sufficient proof of additional injuries was presented to support the claim of compensation of Fred Becktold. The Industrial Accident Board held the proof insufficient and confined its award to the amputation injuries. The district court on appeal affirmed the findings of fact of the Industrial Accident Board. On appeal to this court we are asked to re-examine these findings.

The claimant's testimony was that ever since his hand healed, he has, in addition to trouble caused by the amputation, suffered from pains in his arm and shoulder. The testimony was that the pain and stiffness in the arm and shoulder was of such a nature that it affected his ability to work.

The Industrial Accident Board had the claimant examined by a doctor, other than the one who performed the amputation. This doctor gave the claimant a complete examination including X rays of the back and shoulders. The claimant

described all the abnormalities which he attributed to his injury to the doctor, stating that they consisted of pain in the shoulder and back in the mornings when the injured arm was used, and ache in the entire arm during cold weather. After the complete examination, the doctor testified the X rays had not disclosed any fracture, dislocation, bone or joint abnormalities other than the amputated fingers and thumb.

His opinion was expressed as follows:

"It was my impression that there was no significant disability above the wrist joint.

"Q. Did you find any other disability of which Mr. Becktold is suffering other than that caused by the amputation of the thumb and fingers on the left hand? A. No, it was my feeling that all significant disability was confined to the hand."

The doctor's testimony established that any abnormality, if present, could not be seen or demonstrated. From this followed the doctor's opinion that the injury and damaging effects of the injury were not significant above the claimant's wrist. No evidence was offered regarding the pain and discomfort which affected the claimant's ability to work except the evidence offered by claimant in his own behalf.

The claimant's testimony was not directly controverted, but neither was it substantiated by anything other than claimant's self-serving statements, which as previously related were not entirely consistent.

In this connection, Dr. Berg, who examined claimant for the Board, testified as follows:

"Q. Doctor, in your report, on page 2 second paragraph, you say, 'All motions of the spine are accomplished without difficulty'—what does that mean exactly? A. Well, in a normal manner.

"Q. How about complaints of pain? A. Without any.

"Q. When you say 'without difficulty'—it means that when you had the man perform certain tests, to check the

motion of his back, he didn't complain of pain to you?
A.  Correct.''

In spite of his testimony before the Board, claimant was not very voluble about these pains prior to the hearing. He was cross-examined in this regard and the following facts were brought out at the hearing before the Board.

"Q.  You had these pains in the hospital? A. Yes.

"Q.  And did you make any complaint to the nurse? A.  No.

"Q.  To Dr. McGahan [claimant's doctor] ? A.  At the time, no.

"Q.  When did you make your complaint to Dr. McGahan about these pains? A.  Oh about a month later.

"Q.  I must have misunderstood you in answer to Mr. McAlear's questions because I thought you said you didn't report them to Dr. McGahan; were you in error at that time? You told Mr. McAlear that you did not report to Dr. McGahan, that you did not report to the doctor these pains in your shoulder. A.  I did not, no.

"Q.  You never reported them to Dr. McGahan? A.  No.

"Q.  The first man you told about these pains was Dr. Berg? A.  Dr. Berg, yes.''

It is also worthy of note that Dr. McGahan did not testify in claimant's behalf.

If the evidence does not clearly preponderate against the findings of the Board, the district court must affirm the Board's order. Moffett v. Bozeman Canning Co., 95 Mont. 347, 26 P.2d 973. Similarly, "This court will not reverse the findings of the district court except where the evidence preponderates against it." Murphy v. Anaconda Co., 133 Mont. 198, 205, 321 P.2d 1094, 1098, quoting from State ex rel. Ebel v. Schye, 130 Mont. 537, 305 P.2d 350.

Here the only evidence which is contrary to the findings of the Board and of the district court, that there is no disability above the wrist, is the subjective testimony of the claim-

ant. This does not constitute a preponderance which would overturn the findings of both the Board and the district court which were based on objective credible evidence.

While we realize that there are cases in other jurisdictions which allow compensation on the basis of claimant's testimony standing alone, we feel that to condone such a practice would be tantamount to waiving all requirements for proof of disability. Though an occasional valid claim may go uncompensated, this is preferable to a situation in which a workman could obtain compensation solely upon his testimony of disability without any substantiation by objective witnesses. And where, as here, the claimant's own story and claim is not entirely consistent with his subsequent testimony, this is particularly apt.

Claimant received the maximum compensation allowable under the specific injury statute for a single person. The Board and the district court do not appear to have abused their discretion in fixing the award. Because of our conclusion on this point it is unnecessary to discuss the other specification of error which goes to the conflict over the amount of wages which the claimant earned before and after the accident.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ANGSTMAN concur.

MR. JUSTICE BOTTOMLY dissenting.

This dissenting opinion was originally written as the opinion in the case.

On May 17, 1957, Fred Becktold, a sawmill worker, was squaring the ends of boards with a power saw. While engaged in doing this work a weight on the saw came off, swung out and hit Becktold on the shoulders, throwing him about eight feet forcefully against the sawmill wall. While being thrown, Becktold's hand hit the power saw and was cut. As a result of the accident Becktold lost his thumb, his index finger and the

middle finger on his left hand. The accident arose out of and in the course of Fred Becktold's employment and was covered by the Workmen's Compensation Act, Plan III.

The question presented here is the extent of coverage to which Fred Becktold is entitled.

The Industrial Accident Board, after the hearing on Becktold's claim, awarded the claimant 200 weeks of compensation. This award was based on the "specific injury statute" being section 92-709, R.C.M.1947, as amended in 1957, and granted the claimant the amount of compensation he would receive under the provisions of the statute if he had sustained the loss of his entire hand. Although Becktold has lost only his thumb and two fingers, the testimony at the hearing showed the award was justified, and it is not disputed that the 200 week award is the minimum award which Becktold should receive in view of the uselessness of the remaining two fingers and the rest of the hand. Becktold's position is that he suffered other injuries in addition to the loss of his thumb and fingers and as a result is totally partially disabled and entitled to compensation for the maximum 500 weeks. It is not disputed that Becktold's injury totally and permanently disabled him from ever performing the work he was doing at the time of his injury. The injury to the hand without anything more had it occurred prior to March 13, 1957, would have supported Becktold's position here, based on this court's holding in Spieth v. Stuart, 130 Mont. 216, 299 P.2d 106.

In the Spieth case this court held that the "specific injury statute", section 92-709, R.C.M.1947, did not limit the number of weeks of compensation which could be awarded for a permanent partial disability covered by section 92-703, R.C.M.1947.

However in 1957, section 92-703 was amended. This amendment became effective March 13, 1957, and as pertinent reads: "* * * provided, however, that *compensation for partial disability* resulting from the *loss of or injury to any member* shall not be payable for a greater number of weeks than is specified

in section 92-709 for the loss of such member." Emphasis added.

This amendment would control the amount of compensation due in this action were the claim confined solely to the amputated parts of the body. *When other injuries are suffered in addition to those resulting in amputation, then of course the specific injury statute would not provide the limitation of compensation duration when as here the additional injuries* complained of and proven affect the body as a whole.

The question presented on this appeal is simply one of whether sufficient proof of additional injuries was presented to support the claim of compensation of Fred Becktold. The Industrial Accident Board held the proof insufficient and confined its award to the amputation injuries. The district court on appeal affirmed the findings of fact of the Industrial Accident Board. On the appeal to this court we are asked to re-examine these findings.

At the time the claimant was injured an eyewitness was also present. The claimant describes his accident as follows:

"Q. And just how did this accident happen? A. Well there was a weight on the saw that came off and swung out and caught me through here (indicating) and my hand and throwed me again the wall about eight feet and cut my hand.

"Q. Now you referred to in here, and what part of the body are you indicating by that? A. Through the shoulder.

"Q. Upper part of the shoulder? A. Yes.

"Q. You were struck there by what? A. By that guard on the saw.

"Q. And you say you were knocked a distance of about how far? A. About eight feet, picked me off the ground about three feet."

In support of Becktold's claim, an eye-witness, Warren O. Wright, owner and operator of the sawmill and employer of Becktold, testified:

"Q. Did you see him, actually see him injured? A. I

was about two hundred feet away, going toward him, and the picture I saw was him just going back away from the saw after he was hit.

"Q. And up against the wall? A. That's right.

"Q. Fast or slow? A. Fast, knocked again the wall."

Thus, the fact was established that the manner in which the accident occurred involved more than the claimant's hand. This evidence is not disputed. Without any injury to the hand, relator established injury to his body and especially his shoulder.

The claimant's testimony was that ever since the hand has healed, he has, in addition to trouble caused by the amputation, suffered from pains in his arm and in his shoulder. It was his testimony that the pain and stiffness in the arm and shoulder were of such a nature that they affected his ability to work. *It was shown that for a period of time after the amputation the arm had drained from the elbow and that a growth had built up in the elbow after the draining had ceased.* A determination of the extent and interpretation of this growth was not made.

The Industrial Accident Board had the claimant examined by another doctor other than the one who had performed the amputations. This doctor had given the claimant a complete examination including X rays of the back and shoulders. The claimant described to the doctor all the abnormalities which he attributed to his injury, being pain in the shoulder and back in the mornings and when attempting to use the injured arm. After the complete examination, the doctor testified that the X rays had not disclosed any fracture, dislocation of bone or joint abnormalities other than the amputated fingers and thumb. X rays do not show, measure or demonstrate pain.

His opinion was expressed as follows:

"* * * It was my impression that there was no significant disability above the wrist joint.

"Q. Did you find any other disability of which Mr.

Becktold is suffering other than that caused by the amputations of the thumb and fingers on the left hand? A. No, it was my feeling that all significant disability was confined to the hand.''

The doctor further testified on cross-examination as follows:

''Q. And he told you of the pain in his upper, the upper portion of his body? A. Correct.

''Q. And as to that pain you were not able to verify it objectively. A. Correct. * * *

''Q. You wouldn't go so far as to say that he doesn't have the pain in the portions of his body that he—where he claims to have them. A. *No, I wouldn't say he doesn't have.*

''Q. About all you can say on that point is that you were not able to demonstrate them objectively? A. Well let's say I was unable to demonstrate any abnormality.

''Q. Objectively? A. Objectively. * * *

''Q. Well he would be in the position to judge whether he actually had these pains or not, isn't that correct? A. Well the answer to that has to be 'yes.' ''

We see then that the evidence presented to the Industrial Accident Board and the district court in summary was as follows:

The claimant had suffered an industrial accident involving trauma to his hand and the entire upper left portion of his body. His mouth had also been cut in the accident. After surgery had corrected as well as possible the most serious damage and the amputated areas had healed the claimant had commenced what work he felt he could accomplish considering his physical condition. He was unable then and will never be able to resume the work he was doing at the time of the accident. Excluding his sawmill experience, Fred Becktold is an unskilled worker, having completed only ten grades of school. While attempting to perform other labor the claimant noticed as he testified the entire arm and shoulder would ache and become

stiff and cause him a great deal of pain. This affected his ability to do other work. Upon examination it could not be demonstrated with certainty that the bones or joints in the upper arm were injured, but it also was admitted that it could not be demonstrated with certainty that the injury and harm to the shoulder and back did not exist. All the doctor's testimony established was that abnormality could not be seen or demonstrated. From this followed the doctor's opinion, qualified by the doctor's admission, that the claimant's testimony concerning pain and suffering was not rebuttable, that the injury and damaging effects of the injury were not significant to him above the claimant's wrist. The doctor's opinion went only toward proof that no abnormality of the bones or joints could be seen or demonstrated. No evidence was offered that the pain and discomfort which affected the claimant's ability to work, and which without dispute resulted from a covered industrial accident, did not exist.

The only witness other than the claimant testifying in that regard admits the claimant's testimony to be the only valid evidence. The claimant's testimony was not controverted. The issue before the Industrial Accident Board and the district court did not concern the cause of the injury complained of by Becktold. The cause was known. Becktold's testimony was credible and uncontroverted. The Industrial Accident Board and the district court cannot disregard uncontroverted credible evidence. See Ross v. Industrial Accident Board, 106 Mont. 486, 495, 80 P.2d 362, and cases therein cited.

In Moffett v. Bozeman Canning Co., 95 Mont. 347, 353, 26 P.2d 973, 976, this court held:

"Under all the rules of evidence, when, after answering a hypothetical question one way or the other, the expert frankly admits that he does not know the answer and that no one in his profession could answer it, the answer to the hypothetical question should be stricken from the record and wholly disregarded by the trier of facts."

The same rule applies when the expert testifies he can prove one fact but that the other witness produced the only credible testimony as to another fact. Then the expert's testimony as to the fact which he admits he is not competent to testify to must be disregarded. The uncontroverted evidence was that Becktold suffered pain and discomfort which affected his ability to work, and that the affected portion involved more than the injury to the hand. Partial disability involving a portion of the entire body was clearly established.

The Board and the district court were in error in finding the injuries sustained by Fred Becktold, when the industrial accident occurred, were confined solely to his hand.

One other matter must be disposed of on this appeal. The Industrial Accident Board and the district court made a finding that Fred Becktold's wages prior to the accident were $66 per week. The finding is not supported by the evidence. The evidence clearly shows the correct weekly wage prior to the accident was $78 per week.

In my opinion, the findings of the Board and of the district court are contrary to the undisputed preponderance of the evidence and the judgment should be reversed and the cause remanded to the district court with instructions to remand the proceedings to the Industrial Accident Board for allowance of such compensation to Fred Becktold as is clearly provided by statute.

In view of the majority opinion promulgated in this case and particularly since said opinion appears to adopt a portion of this dissenting opinion, I believe it becomes necessary for me to point out that this dissenting opinion was the *first* opinion written in this matter.

Further, in view of what is said in the majority opinion I deem it necessary to make some comments about the majority opinion and do this by way of addendum to my dissenting opinion.

My now dissent I believe sets out all the pertinent facts and

testimony in their true perspective. The majority opinion misapplies some of the facts and testimony. This statement appears obvious when we see the majority opinion asserting that the claimant did not know what happened when he was injured. The basis for such assertion is found in the testimony of one of the examining doctors who said the claimant was vague as to what happened during the accident. This ignores the weight of the claimant's testimony and never even *mentions* the fact that the *sole eye witness* to the accident corroborated in detail the claimant's testimony. Using only the doctor's testimony, the majority opinion implies that the only injury the claimant suffered at the time of the accident was a cut hand. This overlooks completely the fact that the same witness the majority rely upon, Dr. Berg, wrote the following letter to the Industrial Accident Board on December 23, 1957, prior to the hearing on this matter, which as pertinent is as follows:

"Mr. George Wood,
Hearing Officer
Industrial Accident Board
Helena, Montana

Re: Fred Becktold
Claim 1526-C-42

"Dear Mr. Wood:

"The following are my findings referable to Mr. Fred Becktold who was examined in my office December 23, 1957. This 24-year-old white male states that on May 17, 1957, he injured his left hand while running a power saw. He *states* that the saw broke, swung out, and hit his left hand cutting the thumb, index, middle, and ring fingers and *bruising the anterior aspect of the left shoulder and cutting the left side of his mouth.*"
Emphasis supplied.

This was repeated by the doctor on direct examination at page 134 of the transcript.

This claimant proved by competent testimony that the trauma from his industrial accident was *not* confined solely to the hand

which suffered the amputation. The sole question then became whether or not the claimant proved *injury* to the other portions of the body by the industrial accident. Two witnesses were presented. The workman testified about the pain and ache of his arm and shoulder. He testified such pain, ache, soreness and stiffness kept him awake at night and affected his ability to perform his work, and he *was working* or *attempting to work*. There was not one single inference of malingering in this record, until gratuitously inserted in the majority opinion. In opposition to the positive testimony of the claimant, a doctor's testimony was offered which testimony does not disprove the claimant's testimony in any respect. The doctor said nothing more than that he could not *see* or demonstrate the source of the pain, ache and soreness of the arm and shoulder. At the same time the doctor did not testify that the pain was *not present*. He admitted the claimant was the sole witness of that fact.

Thus to reach the result of the majority opinion, two well-established rules of law of this state are discarded. The first rule thrown away is that the testimony of one witness is sufficient to prove any fact. This rule is now abandoned and we are told that the testimony of an injured workman alone will not be sufficient to support his case even if as here he admittedly is the *only* competent witness who ever could testify about this matter. We are then informed that the Workmen's Compensation law should never err in favor of the workman but always in favor of the *insurer*. When in doubt we should *deny compensation!* With that statement the majority ignores *the mandate of our law* that the Workmen's Compensation Act *must* be liberally construed *in favor of the injured workman*. To this overturning of many former decisions of this court I dissent and would dispose of this matter as I have heretofore stated.

MR. JUSTICE ADAIR:

I concur in the foregoing dissenting opinion by Mr. Justice Bottomly.