VERNON EDWIN NEWMAN, Claimant and Respondent, v. FRED KAMP, Employer, Truck Insurance Exchange, Defendant and Appellant, and FIREMAN'S FUND INDEMNITY COMPANY, Defendant-Respondent.

No. 10373.

Submitted June 13, 1962. Decided August 8, 1962.

Rehearing denied August 21, 1962.

374 P.2d 100.

Floyd O. Small, (argued orally) and Robert T. Cummins, Helena (appeared), for appellant.

John W. Bonner, Helena (argued orally for claimant), Keller & Magnuson (for defendant), Paul T. Keller, Helena (argued orally), for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court of the eighteenth judicial district.

For purposes of simplicity Vernon E. Newman will be referred to as claimant, Fred Kamp as employer, Truck Insurance Exchange as appellant, and Fireman's Fund Indemnity Co., as respondent.

On March 20, 1959, claimant was employed as an automobile mechanic by Fred Kamp who operated a garage in Three Forks, Montana. On that date and while in the course of his employment, claimant suffered an injury to his foot when a piece of

steel became lodged in the right toe area. At this time appellant Truck Insurance Exchange was employer Kamp's insurance carrier for industrial accident. The record shows that on September 16, 1959, appellant Truck Insurance Exchange paid a claim of $52.32 in connection with the aforementioned injury.

On December 11, 1959, while working for the same employer, but at which time the employer Kamp was insured for industrial accidents by respondent Fireman's Fund Indemnity Co., claimant suffered a second accident to the same toe when he struck it against a jack handle. The severity with which claimant struck his toe on December 11, 1959, is not clear from the record, however, medical testimony does indicate that the blow at least caused osteomyelitis, which had set in after the first accident, to flare up.

From March 20, 1959, the date of the first injury, to December 11, 1959, the date of the second injury, the claimant lost little time at work, although he did require some medical attention. Medical testimony indicates that the injury suffered on March 20, 1959, never completely healed, but was growing better gradually at the time of the second accident. We see from the record that the claimant's condition was complicated by Beurger's disease, diagnosed as such on March 31, 1959, and diabetes, which was discovered on December 26, 1959. Claimant has not worked since December 26, 1959.

Claimant filed a claim for compensation for the second injury; the Industrial Accident Board heard the matter and determined that appellant Truck Insurance Exchange, the insurer at the time of the first accident on March 20, 1959, should pay the claimant $30.50 per week every four weeks until the claimant was able to return to work or until further order of the board. Appellant then appealed to the district court, and after hearing additional evidence, the court adjudged that appellant Truck Insurance Exchange should pay to the claimant $30.50 per week for 500 weeks for total disability which is of a permanent nature.

Appellant's six specifications of error present the following

two issues: first, whether the evidence is sufficient to support the finding that the claimant's disability is due to the first injury; and, second, whether R.C.M.1947, § 92-703, limits the maximum period of recovery to 180 weeks. It should be noted that both the respondent Fireman's Fund Indemnity Co. and the appellant Truck Insurance Exchange contend that the second issue should be answered in the affirmative; the latter briefed this issue, while the former concurred during oral argument.

This is a case involving two accidents occurring during successive periods of coverage by different insurers where, at the time of the second mishap, the injury resulting from the first accident had not completely healed. Both the Industrial Accident Board and the district court held that claimant's disability resulted from the first accident.

Respondent's (Fireman's Fund Indemnity Co.) position rests primarily on the following two findings of fact made by both the board and the district court: (1) the claimant developed osteomyelitis in the right foot, which was well advanced and symptomatic at the time of the bumping on the jack handle on December 11, 1959; and, (2) the osteomyelitis pre-existed the accident of December 11, 1959, and would have, in any event, become disabling to him regardless of the second accident.

In light of the foregoing findings of fact, we must keep in mind the following well-established rules concerning scope of review. We have held that this court will not reverse the finding of the district court except where the evidence clearly preponderates against it. Woin v. Anaconda Copper Mining Co., 99 Mont. 163, 176, 43 P.2d 663 (1935); Tweedie v. Industrial Accident Board, 101 Mont. 256, 265, 53 P.2d 1145 (1936). Similarly, we stated in Birnie v. United States Gypsum Co., 134 Mont. 39, 44, 328 P.2d 133 (1958), that our duty is to determine whether there is any substantial evidence in the record to justify the conclusion of the court.

With the aforementioned rules in mind, we deem the following

testimony relevant on the question of whether or not the first injury on March 20, 1959, caused the disability to claimant Newman.

Dr. Bertagnolli, who first treated the claimant on March 31, 1959, for the first injury testified that the last time he saw claimant on June 1, 1959, he felt claimant was well improved from the infection caused by the first accident. However, he further testified that later the same summer he heard from claimant's wife who informed him that claimant had a recurrence of symptoms, which caused the doctor to be concerned about gangrene due to claimant's poor circulation.

Dr. Crary, who treated the claimant on December 26, 1959, testified: "* * * the damage done must have been from some effect of the previous injury."

Dr. McCabe, who examined the claimant on August 17, 1960, gave the following testimony:

"Q. You have heard his story of the two accidents, and do you think that the first accident was ever completely healed, that the injury from the first accident was ever completely cured? A. Well, from his history, I would have to say no, because he continued apparently to have drainage from that foot.

"Q. He had drainage up until the time he struck it the second time? A. Yes.

"Q. It will be difficult to tell how much injury he got from the second bruise or bump? A. Yes, it would."

Dr. Jenko, who treated the claimant at Fort Harrison Veteran's Hospital, testified that the claimant had been to surgery twice at Fort Harrison, and, although the pains at night had been relieved, it did not do much as to his tolerance for distance walking, because claimant walks a block or so and commences to experience pain. Dr. Jenko further testified:

"Q. Do you think that the first accident caused the osteomyelitis or is there any way of telling? A. Yes, I would say that it did.

"Q. The first accident caused the osteomyelitis? A. I would

say as far as I can tell from the history—I haven't seen the man up until that time.

"Q. Knowing what you know, you are of the opinion that the osteomyelitis antedated the second injury, that the osteomyelitis was in existence at the time of the second accident? A. Yes, I would say so.

"Q. Because the foot was still draining? A. Yes, at the time of the second accident."

Dr. Klein, who examined claimant on behalf of the respondent Fireman's Fund Indemnity Co. on August 17, 1960, and January 25, 1961, testified as follows:

"Q. And now what effect, if any, did this second bumping have, in your opinion, on this infected toe? A. I think it temporarily aggravated the osteomyelitis. I think—it is my opinion further that the osteomyelitis process responded poorly to treatment and also persisted because of the examinee's diabetes. I think that a second aggravating fact. I also think the trauma delivered at the second accident definitely aggravated him because his resistance to infection was low and that would result from his bumping the foot. * * *

"Q. Having examined this man twice and now this history, is it your opinion, based on a reasonable medical certainty, that this osteomyelitis ante-dated the accident of December 11, 1959? A. Yes, it is. I am reasonably certain that the osteomyelitis was caused by the initial accident of March, 1959, and ante-dated by a good many weeks—up to a couple of months—the second injury of December 11, 1959.

"Q. Now doctor, does the fact that there was a foreign body introduced in the first accident have any bearing on your opinion? A. Yes, it does. I think the foreign body was the causative factor in causing the osteomyelitis. * * *

"Q. Did it [the second accident] make it [the injury] substantially worse or cause it to flare up? A. Caused it to flare up temporarily but did not change or substantially influence the course of the underlying bone disease. * * *

"Q. * * * Is it not only possible but probable under all the facts and circumstances shown here that if there had been no second accident it may have gone into spontaneous remission and cure? Isn't that a probability? A. Not a probability. I think it may be a possibility if he were keeping his diabetes under control, if he had not injured it the second time, I think there is a good chance that this could have gone on to spontaneous cure. * * *

"Q. I am willing to accept your diagnosis, doctor, of osteomyelitis and that it was probably caused by the steel going into the foot back in March of 1959. All I am asking you is can you say with any degree of certainty from the examination that you have made that if it had not been for the second accident in December of 1959, can you say that with any degree of certainty this condition would not have continued to improve and that he would not have been able to continue with his work? A. I can say it with considerable—I can say yes with considerable authority that the process could have gone on to healing—if it hadn't been for the second accident."

The foregoing testimony establishes the following: first, it is uncontroverted that the osteomyelitis pre-existed the second accident and was caused by the first accident; second, it also is uncontroverted that the injury caused by the first accident had not completely healed at the time of the bumping on December 11, 1959; third, we see that claimant responded poorly to treatment for osteomyelitis because of poor circulation (Beurger's disease) and diabetes; and, fourth, there seems to be some conflict as to the effect of the second accident—Dr. McCabe opined it would be difficult to tell how much injury the claimant received from the second bruise or bump while Dr. Klein testified that the second accident did not substantially influence the course of the underlying bone disease, but he further stated that the osteomyelitis could have gone on to spontaneous cure had it not been for the second accident.

The Industrial Accident Board after hearing New-

man's claim for compensation, and the district court after examining the record, certified to it by the board and hearing additional testimony held that the claimant's disability was the result of the first accident at which time the appellant Truck Insurance Exchange was employer Kamp's insurance carrier. Proximate cause is a question of fact and for a claimant to recover for an injury from an industrial accident, he must establish by a preponderance of evidence that such injury was the proximate cause of his present condition. Moffett v. Bozeman Canning Co., 95 Mont. 347, 350, 26 P.2d 973 (1933). Likewise as in the instant case where there are two insurers and two accidents, it is incumbent upon the insurer seeking to be relieved from liability to establish by a preponderance of evidence that the claimant's present condition was caused by an accident occurring when the other insurer was on risk.

█ Reviewing the evidence as a whole, we cannot say that it clearly preponderates against the finding of the district court that the claimant's present condition was caused by the first accident, nor can we say that there is no substantial evidence in the record to justify the conclusions of the district court.

Appellant Truck Insurance Exchange asserts that the situation presented in the instant case is not unlike the cases involving pre-existing disease where the employer takes the employee as he finds him. See Birnie v. United States Gypsum Co., 134 Mont. 39, 45, 328 P.2d 133 (1958). Suffice it to say that in the instant case we are dealing with a present condition caused by an industrial accident, whereas in the cases of pre-existing disease the pre-existent condition did not proximately result from an industrial accident.

Appellant next looks to Massachusetts for a rule which holds liable the insurer at the time of the most recent injury that bore a causal relation to the incapacity, even though the earlier injuries were also contributing causes, or even the major contributing cause. See 100 C.J.S. Workmen's Compensation § 373, p. 97, and cases cited therein. We do not deem the above rule

applicable in Montana in view of the fact that we are committed to the doctrine that the particular injury must be the proximate cause of the present condition for which the claimant seeks compensation, Moffett v. Bozeman Canning Co., supra, whereas the Massachusetts rule mechanically looks to the most recent injury so long as it has some connection, however casual, to the subsequent condition.

Appellant further contends that had claimant not been covered by Workmen's Compensation at the time of the first injury, respondent would have been liable. This does not necessarily follow, because if respondent, in that type of situation, proved by a preponderance of the evidence that the first injury caused the present disability, the claimant would then have to look to his employer.

Both the respondent Fireman's Fund Indemnity Co. and the appellant Truck Insurance Exchange contend that under the provisions of R.C.M.1947, § 92-703, and in view of our holding in Becktold v. Industrial Accident Board, 137 Mont. 119, 350 P.2d 383 (1960), the claimant is entitled to no more than a total of 180 weeks compensation, the amount specified in R.C.M.1947, § 92-709, for the loss of the right foot below the ankle.

In the Becktold case we very carefully pointed out that: "When other injuries are suffered in addition to those resulting in amputation, the specific injury statute would not provide the limitation of compensation if the additional injuries complained of were proven."

In awarding the maximum 500 weeks of compensation, the district court found that the claimant Newman has been rendered totally disabled by an injury which is permanent in character, and that he is totally incapacitated from obtaining remunerative employment on account of an accidental injury suffered by him and arising out of and in the course of his employment by Fred Kamp on March 20, 1959.

Does the evidence clearly preponderate against this finding?

We think not. In the first place claimant's foot was not amputated, and, although one doctor testified that he would not hesitate to perform an amputation, he admitted that there would be a certain amount of clinical risk in view of the fact that the claimant is a diabetic and had recently suffered a heart attack. We think there is substantial evidence in the record to support a finding that claimant has suffered additional injuries thereby taking this case out of the limitation enunciated in the Becktold decision.

Finding no reversible error, the judgment of the district court is affirmed.

MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.